STATE ex rel. BLACK and GILMORE, Relators, v.
JOSEPH L. WILSON, Respondent.

Springfield Court of Appeals, August 12, 1911.

1. MANDAMUS: Executions: Publications: Sheriff's Duty to
Place Sale Notice as Designated. This is a mandamus pro-
ceeding, brought at the relation of an execution creditor to
compel a sheriff to comply with section 2218, Revised Statutes
1909, by placing for publication the execution sale notice with
the newspaper designated by plaintiff's attorney of record, it
is *held,* under the evidence, that it was the duty of the sheriff
to place the advertisement with the newspaper designated, but
that the relators could not compel the sheriff by mandamus to
perform this duty for the reason that it did not appear that
the relators would be injured in a pecuniary way by the re-
spondent's breach of duty.

2. ———: ———: ———: ———: Newspaper's Right to Com-
pel Performance. When the plaintiffs, or their attorney of
record, properly designate the newspaper in which the exe-
cution sale notice shall be published, it is the duty of the
sheriff, under section 2218, Revised Statutes 1909, to publish
said notice in such paper, and although the plaintiff may not
be pecuniarily injured by the sheriff's failure to perform this
duty, and could not therefore compel such performance by
mandamus proceeding, yet the newspaper so designated if it
had a special and pecuniary interest in the publication of
such sale notice or any other party having a pecuniary in-
terest in the discharge of such official duty by the sheriff,
making a proper demand for such publication could, by man-
damus, compel the sheriff to perform his duty.

3. ———: Officers: Performance of Duty: Demand Not Necessary
When. The law never requires a vain thing and when the
conduct and actions of the officer are equivalent to a refusal
to perform the duty desired, it is not necessary to go through
the useless formality of demanding its performance before a
writ of mandamus can be issued. Anything showing that the
officer does not intend to perform the duty is sufficient to
warrant the issue of a mandamus.

4. ———: ———: Showing Injury: Performance of Public Duty:
Affecting Private Rights. Where a public duty is sought to
be enforced by private citizens on behalf of themselves and
of the public, they may move for a writ of mandamus and
are not required to plead or prove any special or particular
interest in the result of the performance of the general pub-

lic duty. But a different rule applies where a private citizen seeks to enforce the performance of an official duty to protect a private right. In such cases it must be made to appear that the petitioner has been or will be injuriously affected by respondent's default or breach of duty.

5. ———: ———: Ministerial Duty. Mandamus is an appropriate remedy to compel a public officer to perform a plain ministerial duty imposed by statute and involving no discretion.

6. ———: ———: ———: Corporations: Adequate Remedy in Action for Damages. Mandamus, being an extraordinary remedy must be denied, where the party applying for it has adequate remedy in an action for damages. This rule is however subject to the exceptions that corporations and ministerial officers may be compelled to exercise their functions according to law by mandamus, although the party may have a remedy upon the bond of the ministerial officer.

7. STATUTORY DUTY: Remedy: Common Law. Where a statute has created a duty but has provided no remedy for its breach, recourse may be had to the common law for the remedy.

## Original Proceeding in Mandamus.

PEREMPTORY WRIT DENIED.

*Watson & Holmes* for relators.

(1) The test to be applied in determining the right to relief by mandamus is to inquire whether the party aggrieved has a clear, legal right, and whether he has any other adequate remedy, since the writ belongs only to those who have legal rights to enforce, who find themselves without an appropriate legal remedy. High on Extraordinary Legal Remedies (3 Ed.), sec. 10. (2) On the question as raised by this court as to the right of relators to maintain this action, we submit for the consideration by the court the following authorities as having some bearing directly or by analogy thereon. High on Extraordinary Legal Remedies (3 Ed.), secs. 133 and 134; State ex rel. v. Smith, 104 Mo. 661. (3) Section 3218, R. S. 1909, appears first in the revision of 1879, at section 2380. The words

"which may be designated by the plaintiff or his attorney of record" was left out of the enrolled bill, and this section next appears in the revision of 1889. This section has never been construed by the appellate courts, but the purpose of its enactment was evidently to prevent sheriffs from doing the very thing that the respondent has attempted to do in the case at bar.

*Lorts & Brewer* for respondent.

(1) It is a sufficient return to an alternative writ of mandamus that the respondent has no power to do the act required. Where by lapse of time to grant the writ would prove fruitless, it will not be granted. High on Ex. Legal Remedies, sec. 14; 19 Am. & Eng. Ency of Law (2 Ed.), 756; State ex rel. v. Finley, 74 Mo. App. 213; State ex rel. v. Gibson, 187 Mo. 555; State ex rel. v. Rodman, 43 Mo. 260; State ex rel. v. Draper, 50 Mo. 24. (2) Where relators have another adequate remedy, mandamus will not lie, and this remedy may be by injunction. Tyler v. Twp. Board, 75 Mo. App. 561; State ex rel. v. County Court, 109 Mo. 248; High. on Extraordinary Remedies (3. Ed.), 22; Roth Tool Co. v. Spring Co., 93 Mo. App. 530; Elliott v. Merchants' Ex., 14 Mo. App. 234; Sheppard v. May, 83 Mo. App. 272. (3) It will be remembered that the statute uses the words, "Which may be designated by plaintiffs or their attorney of record." Designate means something which carries a meaning distinct, express, and conveys understanding and is held by all authorities to be synonymous to notice, and this designation must be made by the ones pointed out by statute. 9 Am. & Eng. Ency. Law (2 Ed.), 405; People v. Campbell, 40 Cal. 139; Higgins v. State, 64 Md. 420; Winton v. Wilson, 24 Pac. 91.

STATEMENT.—The relators herein filed in this court on the 20th day of July, 1911, their petition for an alternative writ of mandamus upon which an al-

ternative writ was ordered to issue as follows: (Caption omitted.)

"To Joseph L. Wilson, Sheriff of Phelps County:

"Whereas, L. A. Black and M. E. Gilmore by their petition have represented to this court as follows:

(Caption omitted.)

"The relators state that they are now and at all times hereinafter mentioned were residents of Phelps county, Missouri. That the respondent is now and at all times hereinafter mentioned was the duly elected, qualified and acting sheriff of Phelps county, Missouri.

"Your petitioners, as relators herein, respectfully represent to the court that heretofore, to-wit, on the 3d day of February, 1911, they filed their petition in the circuit court of Phelps county, Missouri, against John R. Jones, H. C. Berger, A. B. Holt and Otto Schoot, as defendants, to enforce a vendor's lien against the following described real estate, lying, situate and being in Phelps county, to-wit: West half of the northeast quarter, the southeast quarter of the northwest quarter, the west half of the southwest quarter, and northeast quarter of southwest quarter, all in section two (2), township thirty-six (36) north, range seven (7), west 5th P. M. That thereafter at the May term of the Phelps county circuit court, 1911, and on the 4th day of May, 1911, your relators obtained judgment against the said John R. Jones, H. C. Berger, A. B. Holt and Otto Schoot for the sum of six hundred eighty-nine and eighteen one-hundredths dollars, and twenty-five dollars as an attorney's fee, which said judgment was made a special lien by the court against said above described real estate, and a special execution was ordered to issue against said above described real estate for the purpose of paying off and satisfying said judgment.

"That thereafter, to-wit, on the 26th day of June, 1911, your relators by their attorney of record, B. H. Rucker, ordered said special execution issued and on said date, W. R. Ellis, clerk of the circuit court of Phelps county, issued said special execution and delivered the same to the respondent herein, who was then and there the duly elected, qualified and acting sheriff of Phelps county, and thereupon your petitioners, by and through their attorney of receord B. H. Rucker, designated the Rolla Herald, a newspaper published in the county of Phelps and State of Missouri, as the newspaper in which to publish the notice of said sale and ordered and directed the respondent herein as such sheriff to give notice of such sale in said paper in accordance with section 2218 of the Revised Statutes of Missouri for 1909.

"That it then and there became and was the legal duty of the respondent herein to cause the notice of such sale to be delivered to Charles L. Woods, editor and publisher of said Rolla Herald, as provided by section 2218 of the Revised Statutes of Missouri for 1909.

"But that nevertheless and notwithstanding that it was the legal duty of the respondent herein to cause the notice of said sale to be delivered to Charles L. Woods, editor and publisher of the Rolla Herald, a newspaper printed and published as aforesaid in Phelps county, the said sheriff, Joseph L. Wilson, in violation of his duty as is prescribed by Section 2218 of the Revised Statutes of Missouri for 1909, refused and still refuses to deliver said notice of said sale to Charles L. Woods, editor and publisher of the Rolla Herald, said newspaper published as aforesaid.

"The relators further state that the circuit court of Phelps county, Missouri, is not in session, nor will said court again be in session until the next regular term thereof at which time it will be too late to have said notice of said sale published in said newspaper

in time to have said real estate sold under said special execution at said term.

"Your relators further state that they are remediless in the premises by or through the ordinary process of law, and they therefore pray this honorable court to award against the said respondent, Joseph L. Wilson, sheriff of Phelps county, Missouri, a writ of mandamus, commanding and requiring him to deliver or cause to be delivered to Charles L. Woods, the editor and publisher of the Rolla Herald, the newspaper aforesaid, notices of said sale under said special execution and for such other relief as may seem meet and proper.

"WATSON & HOLMES,
"Attorneys for Relators.

"B. H. Rucker, being duly sworn, upon his oath states that he is the attorney of record for the above named relators and that the facts stated in the above and foregoing petition are true.

"B. H. RUCKER.

"Subscribed and sworn to before me this 18th day of July, 1911.

"JOHN O. HOLMES, Notary Public.
"(L. S.)

"My commission expires Feb. 13, 1912.

"Now, therefore, we, being willing that full and speedy justice should be done in this behalf to them, the said L. A. Black and M. E. Gilmore, do command and enjoin you that immediately after the receipt of this writ you immediately deliver to Charles L. Woods, editor and publisher of the Rolla Herald, at Rolla, Phelps county, Missouri, for publication according to law the notice of said sale under the said special execution hereinbefore described, or that you appear before the Honorable Springfield Court of Appeals, at the city of Springfield, on the 2d day of August, 1911, at ten o'clock a. m., to show cause for your refusal

so to do. Herein fail not at your peril, and have then and there this writ.

"Witness, Harry H. Mitchell, clerk of our court of appeals, with the seal hereunto affixed, at office in the city of Springfield, the 20th day of July, in the year of our Lord, one thousand nine hundred and eleven.

(Seal) "HARRY H. MITCHELL, Clerk."

Thereafter, the respondent filed in this court his return which is as follows: (Caption omitted.)

"Now comes Joseph L. Wilson, respondent, and for return to the alternative writ of mandamus herein admits, that the relators are and were at all times as alleged in said writ, residents of Phelps county, Missouri, and that respondent is now, and at all said times was the duly elected, qualified and acting sheriff of Phelps county, Missouri; admits that relators filed their petition on the date alleged in the circuit court of said county and state, against John R. Jones, H. C. Berger, A. B. Holt and Otto Schoot, as defendants, for the purpose of enforcing a vendor's lien against the real estate in said writ described; that the relators obtained judgment in said court against said defendants for the sum of six hundred eighty-nine dollars and eighteen cents and twenty-five dollars attorney's fee; that said judgment was made a special lien against said real estate and that a special execution was ordered to issue against said real estate for the purpose of satisfying said judgment. Your respondent further admits that on the 26th day of June, 1911, W. R. Ellis, clerk of the circuit court of Phelps county, Missouri, issued a special execution against the real estate aforesaid and on said date delivered notice of sale and order under said execution to the respondents herein.

"The respondent herein denies that relators by and through their attorney of record, B. H. Rucker, on the 26th day of June, 1911, or at any other time before said notice of sale and order was delivered

by respondent for publication, ever designated the Rolla Herald as a newspaper in which to publish said notice of sale and order. Denies that it became or was the legal duty of the respondent to cause the notice of sale to be delivered to Charles L. Woods, editor and publisher of the said Rolla Herald, for publication; denies that the said B. H. Rucker, attorney for relators, aforesaid, ordered and directed the respondent herein to give notice of such sale in said Rolla Herald by publication of said notice therein. and especially denies that relators are remediless by and through the ordinary process of law for relief.

"Respondent further states that said notice of sale and order was delivered to him by the clerk of the circuit court as aforesaid, without designation or direction by relators, or their attorney of record, B. H. Rucker, as to where, or in what newspaper it should be published; that on the 28th day of June, 1911, respondent, in the discharge of his duty as sheriff of Phelps county aforesaid, and after delivery of said notice of sale and order by the circuit clerk aforesaid, and without designation or direction as to the publication of the same by relators, their attorney of record, or any one acting for them, agreed and contracted for the publication of said notice of sale and order so issued to him under the execution aforesaid with one Joseph Lavender, editor and publisher of the Rolla Times, a newspaper published weekly in the city of Rolla, said county and state, for the publication of same and pursuant to and by reason of said contract and agreement, he did on said day deliver said notice of sale and order to the said Joseph Lavender for publication, as provided by law, and that the same is now, and was at the time of issuing said alternative writ of mandamus aforesaid, being published in accordance with said contract and agreement, and that respondent now has no control over said notice of sale and order or its publication, nor has he had any con-

trol over same since the issuance of said alternative writ, or since the 28th day of June, 1911, and is now and at all times since said date has been powerless to deliver or cause to be delivered said notice of sale to Charles L. Woods, publisher of said Rolla Herald aforesaid, owing to his contract and agreement and delivery of said notice to the said Lavender.

"Respondent further states that relators have, and did have a specific remedy fully adequate to afford redress against the acts of the respondent as they have alleged them in the alternative writ aforesaid.

"Wherefore, by reason of the premises aforesaid, this respondent asks that peremptory writ of mandamus against respondent herein be denied, and having fully answered asks to be discharged with his cost.

"LORTS & BREUER,

"Attorneys for Respondent.

"Comes now Joseph L. Wilson, respondent herein, who first being duly sworn upon his oath says that the facts stated in the foregoing return are true.

"JOSEPH L. WILSON.

"Sworn to and subscribed before me this 1st day of August, 1911.

(Seal)        "L. H. BREUER, Notary Public.

"My term of office expires January 17, 1913."

Therefore, relators filed a reply which it is not deemed necessary to set forth.

The relators, having put in issue the facts constituting respondent's affirmative defense, depositions were taken by the parties pertinent to that question.

The issues of fact presented by such defense were, whether at the time the special execution was delivered to the respondent he was directed by relators or their attorney to publish the notice of sale in the Rolla Herald, and whether, after having received the execution, without designation or direction as to pub-

158 App.—8

lication of the notice of sale thereunder, he contracted for the publication of such notice of sale with the editor and publisher of the Rolla Times, a newspaper published weekly in the city of Rolla, Phelps county, Missouri, having averred that since that time he has had no control over the same, and whether the relators or their attorney ever notified the respondent that they had designated the Rolla Herald as the newspaper in which they desired the notice of sale published.

Several witnesses were examined by the parties as to these issues, but from the view we have taken of the case, it is quite unnecessary in order to elucidate the questions of law herein involved to burden the opinion by setting out *in extenso* this evidence. We think the substantial questions of fact involved are sufficiently admitted by the respondent himself in his deposition, and such excerpts from his testimony, as well as from the testimony of J. N. Lavender, editor of the Rolla Times, will be noticed in the opinion as bear on the vital question in this case.

NIXON, P. J. (after stating the facts as above).— This is an action to enforce a right that the relators claim by virtue of section 2218, Revised Statutes 1909, concerning executions and what notices shall be given by the sheriff in cases of sales of real estate, which is, in part, as follows: ''When real estate shall be taken in execution by an officer, it shall be his duty to expose the same to sale at the courthouse door, on some day during the term of the circuit court of the county where the same is situated, having previously given twenty days' notice of the time and place of sale, and what real estate is to be sold and where situated, by advertisement in some newspaper printed in the county which may be designated by the plaintiff or his attorney of record, if there be one regularly published, weekly or daily, and if not, by at least six printed or

written handbills, signed by such sheriff, and put up in public places in different parts of the county; . . .''

The evidence shows that on the 4th day of May, 1911, the relators herein obtained a judgment in the circuit court of Phelps county against John R. Jones and others in the sum of $689.18 and $25 additional as attorney's fee, and that a vendor's lien was declared on the real estate described in said judgment. That on the 26th day of June, 1911, relator's attorney of record, B. H. Rucker, ordered a special execution on said judgment and the same was issued by the clerk of the circuit court of Phelps county, and was by him delivered to the respondent herein who was at that time and is now sheriff of said county. That respondent delivered the notice of sale for publication to the Rolla Times. The controlling facts as to his action in this matter are brought out in his own testimony as follows:

"Q. I will ask you, Mr. Wilson, whether as sheriff of Phelps county, Missouri, on or about the 26th day of June, 1911, you received from W. R. Ellis, clerk of the circuit court of Phelps county, a certain notice of sale or special execution in a case in which L. A. Black and M. E. Gilmore were plaintiffs and John R. Jones, H. C. Berger, A. B. Holt, and Otto Schoot were defendants? A. I did. Q. What did you do with these notices and orders? A. I turned them over to the editor of the Rolla Times for publication. Q. Who is the editor? A. J. N. Lavender. Q. How long after you received these papers from the clerk of the circuit court was it until you turned them over to the editor of the Times? A. I don't remember the exact number of days, but two or three days, I think; I can't remember exactly. Q. Did you have any agreement or understanding with Mr. Lavender at the time you turned it over to him? A. I did not. I gave it to him and told him to publish it in the Rolla Times. Q. I will ask you whether prior to the time

you gave this notice to Mr. Lavender for publication, Mr. B. H. Rucker, or the relators named in this case, or any one for them, had designated any newspaper in which you should publish this notice? A. They did not. Q. Mr. Wilson, I will ask you if after you delivered this paper to Mr. Lavender for publication you had any talk with Mr. Rucker as to publishing it? A. Yes, sir, I did; in front of my store; I don't remember the day. Q. Was this after you delivered this notice of sale to Mr. Lavender? A. Quite a while after, but I don't remember the number of days; it must have been a week after that. Q. Was that after you received notice of an application for a writ of mandamus or before that you had this talk with Mr. Rucker? A. It was before this notice was served that I had the talk with Mr. Rucker." *Cross-examination*: "Q. Did you have a talk or have any conversation with Mr. Ellis, the circuit clerk, at the time he delivered this special execution to you? A. I had a talk with him at that time but don't remember just what it was; don't remember whether it was about this special execution; we had a talk along this line but don't remember that it referred particularly to this execution. Q. What conversation did you have about the execution he delivered to you at that time? A. He said something about it that he believed I was to take these to the Herald. We may have talked about these things and I think I said I don't believe any one has a right to tell me where I must take these things. Q. Were there any notes or notations on this special execution? A. On the bottom of this one it said 'Herald.' Q. What did you understand by that notation? A. There wasn't anything enough to understand what that meant. Q. What did you understand by it? A. I couldn't say that I understood anything about it. The word 'Herald' was there but did not have any writing to indicate what it meant. Q. Didn't you have a conversation with Mr. Ellis, the circuit clerk, at the

time you got this special execution with that notation on it as to where this should be published? A. He said that it was understood that it was ·to go to the Herald but he didn't say who wanted it to go to the Herald or anything of that kind. Q. Did you have any talk with Mr. Rucker, the attorney of record in this case, as to where .this notice should be publishéd? A. I had a talk with him a day or so after I delivered it to Mr. Lavender. Q. Whereabouts? A. He came down to the store, in front of the store, and asked why I didn't give that notice to the Herald. I told him I didn't consider that I had to give it to any paper, I could give it where I pleased and that I had taken it and given it to the Times. He insisted that he had a right to have it taken to the Herald and that he wanted it there and that he wouldn't pay any costs to the Times. I said that I had given it to the Times and the only way they would get it away was· to take it away from them and that I considered it my right to take it where I pleased. Q. Mr. Wilson, are you a stockholder in the Rolla Times? A. I am. Q. How much stock have you got in it? A. Twenty-one shares. . . . In my conversation with Mr. Rucker, I told him that the editor of the Herald was no friend of mine. Q. And wasn't that the reason you didn't deliver the notice of sale to him? A. The reason I said was that I considered it my right to take them where I pleased and I was going to take them there.''

J. N. Lavender, editor and business manager of the Rolla Times was sworn and testified, in part as follows: ''That the Rolla Times was and is a weekly newspaper published in Rolla, Phelps county, Missouri. Q. I will ask you, Mr. Lavender, if you received a notice of sale and order for publication in your paper from Mr. Wilson under the style of L. A. Black and M. E. Gilmore v. John R. Jones and others? A. I did. Q. When did you receive that notice? A. Somewheres along about the first of July, I don't re-

member the exact date.  Q.  Who did you get this no-
tice from?  A . Mr. Wilson.  Q.  What did he deliver
it to you for?  A.  For publication.  Q.  State whether
or not you are publishing that notice in your news-
paper now?  A.  I am.  Q.  Do you remember when
you first inserted that notice in your paper?  A.  July
27, 1911.''  *Cross-examination*:  ''Q.  At the time you
published this in your paper is it not a fact that you
had notice that an alternative writ of mandamus had
been issued against its publication?  A.  I knew that
a notice of that kind had been served on the sheriff,
but I had no notice not to continue the publication.  Q.
Is it not a fact that you had an article in your paper
stating that the alternative writ of mandamus had been
issued against the sheriff prior to the publication of
this notice in your paper?  A.  I think they were
both in the same week.''

The statute, in a case like the present, gave the
relators or their attorney the authority to designate
the newspaper in which the notice of sale should be
published, and when such designation was properly
made, it became the clear statutory duty of the re-
spondent as sheriff to publish the notice in the news-
paper so designated, and it was also clearly the official
duty of the respondent to give the relators or their at-
torney a reasonable opportunity to exercise their stat-
utory privilege of designating the newspaper in which
they desired the publication of the notice made, and,
if in the meantime the respondent wrongfully gave the
notice of sale for publication to some other newspaper,
it was no less his duty to give such notice or another
notice of sale for publication to the newspaper which
the relators or their attorney had selected.

Under the evidence given by the respondent him-
self, we think it was substantially shown that he had
sufficient notice as a matter of law that the relators
desired the notice of sale published in the Rolla Her-
ald and also that relator's attorney made a sufficient

demand upon him that it should be published in such newspaper. "The law never demands a vain thing, and when the conduct and action of the officer is equivalent to a refusal to perform the duty resired, it is not necessary to go through the useless formality of demanding its performance. Anything showing that the defendant does not intend to perform the duty is sufficient to warrant the issue of a mandamus." [Merrill, Mand., sec. 225; Coffee v. Ragsdale, 37 S. E. 1. c. 970.] The evidence unquestionably tends to show, from the statements of respondent himself, that under his conception of his official duty he was not required to give the notice of sale for publication to any newspaper designated by the plaintiffs or their attorney of record but that he could exercise his own discretion and give it to any newspaper he saw fit.

But a more fundamental question confronts us, going to the very root of the relator's right to maintain this action; that is, whether their petition for an alternative writ shows such a special interest in the matters in litigation herein as to entitle them to the remedy of mandamus.

The relators by their petition base their right to institute the present proceedings upon the fact that they have a judgment declaring a vendor's lien on certain real estate and that a special execution has been issued thereon; so that it appears on the very face of the application that a private right only is involved in this proceeding. In such case, the law requires a different showing as to relator's interest than where a public right is involved when such right is sought to be enforced by a private citizen. Where a public duty is sought to be enforced in which the public generally is interested by private citizens on behalf of the public as well as on their own, they may move for a writ of mandamus and are not required to plead or prove any special or particular interest in the result of the performance of the general duty because the people are

regarded as the real, moving party. [State ex rel. Rutlendge v. School Board, 131 Mo. l. c. 514, 33 S. W. 3; People ex rel. Van Dyke v. Railroad, 42 Fed. 1. c. 641.] But a different rule applies where a private citizen seeks to enforce the performance of an official duty to protect a private right. The authorities hold that mandamus is an appropriate remedy to compel a public officer to perform a plain ministerial duty imposed by statute and involving no discretion. Generally, however, in such cases, the rule is that a writ of mandamus, being an extraordinary remedy, must be denied where the party applying for it has an adequate remedy in an action for damages. This rule as to another adequate remedy, however, is subject to the exception that in cases of corporations and ministerial officers they may be compelled to exercise their functions according to law by mandamus, although the party may have a remedy upon the bond of the ministerial officer. [State ex rel. Craig v. Dougherty, 45 Mo. 294, 299.] But in cases where private rights are sought to be enforced, it must be made to appear by the petition or alternative writ that the petitioner has been injuriously affected by respondent's default or breach of duty, or that he will be injuriously affected if that duty is not performed. [26 Cyc. 443.] This rule has been stated in the case of People ex rel. Larkin v. Palmer, 59 N. Y. Supp. 1. c. 64, as follows: "Courts are instituted to administer justice, and to grant relief against grievances, and not to sit in judgment upon academic questions at the suit of persons who do not come into court alleging a cause of action. A writ of the character asked for here (mandamus) can only issue when a clear legal right to it is made to appear." The rule has been announced by many authorities that a peremptory writ of mandamus will never be granted to a private party unless it shall be made to affirmatively appear that he will otherwise be deprived of something of substantial value to him.

[North v. Board of Trustees, 27 N. E. l. c. 57.] Mandamus itself has been defined as a writ commanding the performance of some act or duty therein specified in the performance of which the applicant for the writ is specially interested, or by the nonperformance of which he is aggrieved or injured. [Louisville Home Tel. Co. v. City of Louisville, 113 S. W. 855.] The remedy by mandamus, where private parties apply to enforce a private right, is restricted to cases where the relator is deprived of some pecuniary right. [19 Am. and Eng. Ency. Law, 884.]

The question presented here is whether the relators by their pleadings have qualified themselves under these principles of law to be entitled to a peremptory writ of mandamus to compel the sheriff to publish the notice of sale in the Rolla Herald. The relief sought in this proceeding is unquestionably merely private as distinguished from public, and, under the authorities cited, the relators, in order to be entitled to the remedy sought, must show a direct, special and substantial interest in themselves in the subject-matter of the proceeding. How do the relators in their petition or by the alternative writ meet these requirements? From their pleadings, the only interest shown by the relators in the publication of the notice of sale is to enable them to realize at the execution sale of the real estate the amount of their judgment, interest, and costs, or as near such amount as practicable. There is no showing in relator's petition that the Rolla Times is not a weekly newspaper having an equal or greater circulation than the Rolla Herald, or that the publication of the notice of sale in the Rolla Times would not as well notify persons who might be interested in purchasing the property at the execution sale. There is no showing that the amount that would be realized from a sale of the land under relators' special execution would be any less if the notice of such sale were published in the Rolla Times.

rather than in the Rolla Herald. Hence there is no showing that relators have been or will be in any way injuriously affected in a pecuniary way by the respondent's breach of duty by reason of the advertisement of the notice of sale being placed in the Rolla Times rather than in the Rolla Herald. It does not follow because the relators or their attorney of record are allowed to designate the newspaper in which the notice of sale shall be published under the execution issued on their judgment, that they, in the absence of any statute to that effect, have therefore the right to enforce the discharge of that duty by mandamus. Where a statute, having created a duty, has given no remedy for its breach, recourse may be had to the common law for the remedy; and in the present case the remedy by mandamus would be available to any person who could show that he would be pecuniarily injured by the default of the sheriff to perform his official duty in not publishing the notice of sale in the newspaper designated as provided by said section 2218, Revised Statutes 1909. When the relators or their attorney had properly designated the Rolla Herald as the newspaper in which they desired the publication of the notice of sale to be made, then the proprietors of that newspaper had a direct and special interest in having the publication of such sale notice appear in their newspaper and to receive the compensation and fees which the statute allows for such advertisement. [Louisville Home Tel Co. v. City of Louisville, 113 S. W. 855.] And, in such case, if the Rolla Herald had made a proper demand for such publication and the respondent had refused, such refusal would have been a refusal to perform a ministerial act which the statute requires him to perform and the special interest of that newspaper in the matter would have sufficiently appeared. [Braddy v. Whiteley, 39 S. E. 317; Coffee v. Ragsdale, 37 S. E. 968; Register Newspaper Co.

.v. Yeiser, 80 S. W. 478.] The controlling facts of the present case bear such a close analogy to the facts in the above cited cases as to be governed by the legal principles therein announced.

Other questions of great interest are presented, and urged with ability by learned counsel in this case, but the view we have taken of the case does not require the widening of the scope of this discussion in order to reach a decision. The relators have failed to state in their petition and in the alternative writ of mandamus facts showing any direct and special pecuniary interest in the subject-matter of the controversy and their application for a peremptory writ of mandamus is accordingly denied. *Cox, J.*, concurs; *Gray, J.*, absent.