THE STATE EX REL. L. D. THOMPSON as State Auditor, STATE BOARD OF EQUALIZATION and STATE TAX COMMISSION, Relators, v. K. C. JONES as Clerk of County Court of Morgan County, Respondent.—41 S. W. (2d) 393.

Court en Banc, June 30, 1931.

*Stratton Shartel,* Attorney-General and *Albert Miller,* Assistant Attorney-General, for relators; *L. Cunningham* of counsel.

*R. M. Livesay* and *M. C. Livesay* for respondent; *Phil M. Donnelly* and *Clark, Boggs, Cave & Peterson* of counsel.

ATWOOD, C. J.—This is an original proceeding in mandamus by the State Auditor, the State Board of Equalization and the State Tax Commission of Missouri to compel the Clerk of the County Court of Morgan County to compute and extend taxes for the year 1929 on certain personal property omitted by the county assessor from the assessment books of said county, and thereafter placed on said books and the valuation thereof fixed by said State Tax Commission and approved by said State Board of Equalization before the tax books had been delivered to the county collector.

Respondent waived issuance of the alternative writ and pleaded to the petition as though it were the alternative writ, to which pleading we shall hereinafter make appropriate reference. Relators thereupon filed motion for judgment on the pleadings.

Respondent's position is generally indicated in his statement of the case from which we quote as follows:

"In the year 1929, the Texas-Empire Pipe Line Company was building a pipe line across the State of Missouri. On the first day of June, 1929, the pipe line was not completed across the State so that oil could be pumped through it, and the State Tax Commission held that the same was not assessable by them under Section 13002, Revised Statutes 1919 (Sec. 10012, R. S. 1929), but should be assessed by the various county assessing officers under the laws relating to the assessment of individual property owners. [Article 2, Chapter 119, Revised Statutes 1919; Article 2, Chapter 59, Revised Statutes 1929.] The company turned in no tax list in Morgan County for the year 1929, and the assessor found and assessed no property of the company in Morgan County for said year.

"The State Tax Commission, purporting to act under authority conferred upon it by Sections 12847 to 12849, Revised Statutes 1919 (Secs. 9853, 9854 and 9855, R. S. 1929), held a meeting at the county-court room in the courthouse in Versailles, Morgan County, Missouri, on the 14th day of July, 1930, at which time and place, one H. S. Bales appeared as agent for the State Tax Commission, and found that the Texas-Empire Pipe Line Company had in Morgan County, on the 1st day of June, 1929, 'fifteen carloads of material for the construction of an oil pipe line' of the actual value of twenty-five

thousand dollars. He further found that such property had not been returned by the company, or assessed by the county assessor or board of equalization, and had been omitted from the tax rolls of said county. He fixed the valuation of said property and distributed the same among three school districts in said county, but did not place it in any road district. The entry of this property upon the assessment books appears on page 23 of the abstract. At said time and place he also wrote in said assessment book his certificate of these proceedings.

"It is to be noted that in entering the property upon the assessment books, the agent of the State Tax Commission did not enter the property as assessors are required to do, but wrote the name of the company and following it and over several lines wrote: 'fifteen carloads of material for the construction of an oil pipe line.' Then in the column provided for valuation he placed $5,000 in school district number one, $12,500 in school district number ten, and $7,500 in school district number nine. The assessment does not show the nature, kind or quantity of property in any district, but is made to apply to all the districts in a lump. The assessment does not show what road districts the property was located in. In the certificate of the agent, which is required to be made, the agent did not find in what school district the property was located, or in what road districts it was located. The certificate simply states that he found the property within the county. The certificate of the agent, presented to the State Tax Commission, and by it approved, does not conform with the certificate spread upon the records of Morgan County. In the certificate presented to the Tax Commission, the agent merely certified that he found $25,000 worth of personal property in the county, which was placed upon the assessment rolls by proper description and the sum of $25,000 placed in the proper column therefor. This proceeding was later ratified by the State Tax Commission and thereafter approved by the State Board of Equalization. All of these proceedings were then certified to the respondent, the Clerk of the County Court of Morgan County. The respondent did not extend taxes upon this purported assessment made by the agent of the State Tax Commission. Respondent delivered the tax books to the Collector of the Revenue for Morgan County, Missouri, as required by law, and took the collector's receipt therefor before the action was instituted."

It is the position of relators that the State Tax Commission was authorized to make the assessment in question by Sections 12847 and 12848, Revised Statutes 1919, now Sections 9854 and 9855, Revised Statutes 1929, and that it was made in accordance therewith.

Relevant portions of Section 9854, Revised Statutes 1929, prescribing the duties and powers of the State Tax Commission, are as follows:

"It shall be the duty of the commission, and the commissioners shall have power and authority, subject to the right of the state board of equalization, finally to adjust and equalize the values of real and personal property among the several counties of the state, as follows:

"(1) To have and exercise general supervision over all the assessing officers of this state, over county boards of equalization and appeal in the performance of their duties, and to take such measures as will secure the enforcement of the provisions of this article, and all the properties of this state liable to assessment for taxation shall be placed upon the assessment rolls and assessed in accordance with the letter and plain provisions of the law. . . .

"(6) The commission shall have the exclusive power of original assessment of railroads, railroad cars, rolling stock, street railroads, bridges, telegraph, telephone, express companies, and other similar public utility corporations, companies and firms now possessed and exercised by the state board of equalization. Said commission shall also have all powers of original assessment of real and personal property now possessed by any assessing officer, subject only to the rights given by the Constitution to the state board of equalization.

"(7) To cause to be placed upon the assessment rolls omitted property which may be discovered to have, for any reason, escaped assessment and taxation, and to correct any errors that may be found on the assessment rolls and to cause the proper entry to be made thereon.

"(8) To raise or lower the assessed valuation of any real or personal property, including the power to raise or lower the assessed valuation of the real or personal property of any individual, copartnership, company, association or corporation: *Provided,* that before any such assessment is so raised, notice of the intention of the commission to raise such assessed valuation and of the time and place at which a hearing thereon will be held, shall be given to such individual, copartnership, company, association or corporation as provided in section 9855."

Provisions of Section 9855, Revised Statutes 1929 prescribing the procedure when "property subject to taxation has been omitted from said roll, or individual assessments have not been made in compliance with law," are as follows:

"After the various assessment rolls required to be made by law shall have been passed upon by the several boards of equalization and prior to the making and delivery of the tax rolls to the proper

officers for collection of the taxes, the several assessment rolls shall be subject to inspection by the commission, or by any member or duly authorized agent or representative thereof, and in case it shall appear to the commission after such investigation, or be made to appear to said commission by written complaint of any taxpayer that property subject to taxation has been omitted from said roll, or individual assessments have not been made in compliance with law, the said commission may issue an order directing the assessing officer whose assessments are to be reviewed to appear with his assessment roll and the sworn statements of the person or persons whose property or whose assessments are to be considered, at a time and place to be stated in said order, said time to be not less than five days from the date of the issuance of said order, and the place to be at the office of the county court at the county seat, or at such other place in said county in which said roll was made as the commission shall deem most convenient for the hearing herein provided. A copy of said order shall be published in at least one newspaper published in said county, if there be one, at least five days before the time at which said assessor is required to appear; or, where practicable, notice by mail may be given prior to said hearing to all persons whose assessments are to be considered. A copy of said order shall be served on the assessing officer at least three days before he is required to appear with said roll. The commission, or any member thereof, or any duly authorized agent, shall appear at the time and place mentioned in said order, and the assessing officer, upon whom said notice shall have been served, shall also appear with said assessment roll. The commission, or any member thereof, or any duly authorized agent thereof, as the case may be, shall then and there hear and determine as to the proper assessment of all property and persons mentioned in said notice, and all persons affected, or liable to be affected by review of said assessments thus provided for, may appear and be heard at said hearing. In case said commission, or any member or agent thereof who is acting in said review, shall determine that the assessments so reviewed are not made according to law, he or they shall, in a column provided for that purpose, place opposite said property the lawful valuation of the same for assessment. As to the property not upon the assessment roll, the said commission, or member or agent thereof, acting in said review, shall place the same upon said assessment roll by proper description and shall place thereafter in proper column the value required by law for the assessment of said property. The commission shall also spread upon said roll a certificate signed by each member officiating at the proceeding, showing the day and date on which said assessment roll was reviewed. . . . The action of the commission, or member or

agent thereof, when done as provided in this section, shall be final, when approved by the state board of equalization. When any property has been reviewed, assessed and valued by the commission. as herein authorized, such property shall not be assessed or valued at a lower figure by the local assessing or equalizing officer for the year the assessment is made.''

. In his return respondent pleads the unconstitutionality of the foregoing sections, alleging that they are violative of Section 10, Article X, and Section 18, Article X, Constitution of Missouri. It does not appear from the record that respondent, who is acting as a mere ministerial officer, has any greater interest than that of any other citizen in the constitutional questions which he invokes. In such case the rule is well settled that he has no right to decline the performance of purely ministerial duties which are imposed upon him by a law, on the ground that it contravenes the Constitution. [State ex rel. v. Williams, 232 Mo. 56, 64, 133 S. W. 1; State ex rel. v. Johnston, 234 Mo. 338, 350, 137 S. W. 595; State ex rel. v. Woods, 317 Mo. 403, 408, 296 S. W. 381; 30 A. L. R. 370.] However, these sections have been before us several times for construction, and in Laclede Land & Imp. Co. v. State Tax Commission, 295 Mo. 298, 243 S. W. 887; State ex rel. Gardner v. Harris, 286 Mo. 262, 227 S. W. 818, and State ex rel. Buchanan County Power Transmission Co. v. Baker, 9 S. W. (2d) 589, 320 Mo. 1146, we have either directly or inferentially held that these sections were violative of Section 10, Article X, of the Constitution of Missouri. But in the later case of Brinkerhoff-Faris Trust & Sav. Co. v. Hill, 323 Mo. 180, 19 S. W. (2d) 746, 751, we have ruled otherwise, and said:

''The State Tax Commission is given general supervision over all the assessing officers of the State, with power to enforce its orders; it has all the powers of original assessment; it may receive complaints as to *property liable to taxation that has not been assessed,* or that has been *fraudulently or improperly* assessed, and apply the proper corrective measures; it can raise or lower the assessed valuation of real or personal property either in specific instances or by class; and it has authority, *on the complaint of any taxpayer* and *after the various assessment rolls have been passed upon by the several boards of equalization,* but before the delivery of the tax rolls to the proper officers for collection, to hold hearings for the purpose of determining whether any property subject to taxation has been omitted from the assessment rolls and whether any property thereon has been improperly valued, and to make such changes with respect thereto as shall be necessary to make the assessment rolls conform to the facts as found by them.

"It is no doubt true that the State Tax Commission was not intended to supplant local assessing officers and boards, but very clearly it is given full and adequate power, not only to supervise, but to review, their work, and where it finds assessments which were not made conformably to law to revise them—and this by inserting where necessary, after a hearing, its own valuations in lieu of those made by the local authorities. It is also true that its revision of the assessments as made by county assessors and boards, in so far as it affects the equalization of the values of property among the respective counties of the State, whether such revision be made before or after the state board has acted, is subject to the approval of that board. And in this connection it should be said that, even though the action of the State Board of Equalization in the first instance completes the assessment judgment, that fact does not preclude a revision of such judgment by the tax commission, subject to the board's final approval. The technicalities relating to judgments of courts are without application.

"In Laclede Land & Improvement Co. v. State Tax Commission, 295 Mo. 298, 243 S. W. 887, it was said that, if the Tax Commission Act was intended to confer upon the body created by it the powers which in preceding paragraphs we have held the commission possesses, the act is violative of Section 10, Article X, of the Constitution. The constitutional provision referred to is as follows: 'The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, *but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.*'

"It was held in the case just mentioned that the italicized portion of the section clearly embodies the idea that the assessment of local property should be made by local authorities, and not by any state agency which might be created by the Legislature. But it is plain from the section as a whole that its main objective is to prohibit the General Assembly from imposing upon the several political subdivisions of the State, their inhabitants, or their property, taxes for purely local purposes. The italicized portion is subsidiary; it merely indicates how taxes for such purposes may be assessed and collected. The assessment of property for taxation, though carried on simultaneously by county officers and boards, is for the purpose in part of affording a basis for the levy of a state tax; to that extent it is a state assessment. As such it is subject to the jurisdiction of the State Board of Equalization, a state agency created by the Constitution itself. The very fact that the Constitution sets up such a tribunal as the State Board of Equalization demonstrates

that it was not the intent of the framers of that instrument that the assessment of property for taxation should be beyond the pale of state supervision and control. Laclede Land & Improvement Co. v. State Tax Commission, supra, to the extent that it is in conflict with the views hereinbefore expressed, is overruled.''

Counsel for respondent say that the foregoing is *obiter* in view of the issues presented in the Brinkerhoff case. We do not think so. The opinion shows that the complaint was not only that ''sucking animals and poultry'' were entirely omitted from the assessment, but that, although shares of stock in plaintiff bank were assessed at 100 per centum of their value in money, all other property assessed was assessed at not exceeding seventy-five per centum of its true value. A construction of the foregoing sections was thus directly called for and what was said in the opinion with reference to the powers of the State Tax Commission, especially its power to make original assessment either in specific instance or by class, was pertinent and necessary to reach the conclusion stated. This case was subsequently reversed and remanded in 50 Sup. Ct. Rep. 451, 281 U. S. 673, 74 L. Ed. 1107, solely on the matter of procedure, and our ruling therein touching the authority of the State Tax Commission under the foregoing statutes stands unimpaired. It expressly overruled the Laclede Land & Imp. Co. case, supra, on this point, and impliedly overruled all other cases announcing the same doctrine. A purpose to stay within the true meaning and intent of Section 10, Article X, of the Constitution is evidenced by the following companion statute, Section 9858:

''The commission shall have no power to fix the rate of levy for the state or any political or municipal subdivision thereof; nor shall the commission have any power or authority to supervise the fixing of any tax levied or to be levied. County courts, city councils, school boards, and all other bodies legally authorized to make levies, shall be and remain free to make the rate of levy for their respective local political subdivisions or municipalities at any figure not prohibited by the Constitution or laws of the state. Regardless of any assessed valuation that may be determined upon, the power to fix the amount of taxes to be raised for all political subdivisions and municipalities for any one year shall remain in the local officers charged with the duty of fixing the rate of levy.''

We think the soundness of our construction of these statutes in the Brinkerhoff case is emphasized by the circumstances disclosed by the record in this case and it should be adopted and followed here.

Counsel for respondent also say:

"The purported assessment made by the State Tax Commission did not sufficiently describe the property attempted to be assessed, and did not properly locate it in school districts and road districts, and there was therefore no duty upon respondent to levy taxes thereon."

Section 9855, supra, among other things provides:

". . . As to the property not upon the assessment roll, the said commission, or member or agent thereof, acting in said review, shall place the same upon said assessment roll by proper description and shall place thereafter in the proper column the value required by law for the assessment of said property. The commission shall also spread upon said roll a certificate signed by each member officiating at the proceeding, showing the day and date on which said assessment roll was reviewed. . . ."

As pertinent to the objection above raised we quote as follows from respondent's return:

"Respondent states that on the 24th day of June, 1930, the State Tax Commission of the State of Missouri, entered an order for hearing to be had in regard to the assessment of property owned by the Texas-Empire Pipe Line Company on the 1st day of June, 1929, located in Morgan County, Missouri. That it duly caused notice of said hearing to be served upon the Assessor, County Clerk, Surveyor and Judges of the County Court of the County of Morgan, and State of Missouri, and upon the Texas-Empire Pipe Line Company, notifying them that the hearing aforesaid would be held in the County Court room in the Court House in the City of Versailles, Morgan County, Missouri, all as set out in Exhibit 'A' attached to relator's petition for mandamus herein.

"Respondent states that pursuant to said order and notice of hearing as aforesaid, H. S. Bales appeared at the county-court room in the courthouse, in the city of Versailles, Missouri, on the 14th day of July, 1929, and that there was present at said hearing your respondent herein, the Judges of the County Court of Morgan County, Missouri, the Assessor of Morgan County, Missouri, and the Surveyor of Morgan County, Missouri; that at such time and place attorneys for the Texas-Empire Pipe Line Company appeared specially and protested said hearing as without authority of law."

Respondent's return admits that said assessment so made by said Bales, as agent for said State Tax Commission, is as shown on Exhibit "B" attached to relator's petition, which exhibit, omitting certificate of county clerk, is as follows:

"PERSONAL ASSESSMENT BOOK OF MORGAN
COUNTY, MISSOURI, FOR THE
YEAR, 1930.

|  |  |  |  | School Dist. No. |
|---|---|---|---|---|
| "The Texas | Fifteen car | The assess- | $5000 | 1 |
| Empire | loads of ma- | ment and | 12500 | 10 |
| pipe line | terial for | valuation | 7500 | 9 |
| Co. | the con- | placed | | |
| | struction of | hereon by | | |
| | an oil pipe | H. S. Bales | | |
| | line | agent of the | | |
| | | State Tax | | |
| | | Commission" | | |

Respondent's return also admits that the said Bales entered his certificate upon such assessment rolls showing the day and date of his action therein as is shown by Exhibit "C" attached to relator's petition, which exhibit, omitting certificate of county clerk, is as follows:

"PERSONAL ASSESSMENT BOOK OF MORGAN
COUNTY, MISSOURI, FOR
THE YEAR 1930.

"In the matter of the assessment
of the Texas Empire Pipe Line
Co., a corporation, as of the
first day of June, 1929, for
taxes payable in 1930.

"Assessment of Omitted Personal Property:

"Now on this day this matter coming on to be heard, at the county courthouse in the county-court room, come now the Texas Empire Pipe Line Company, a corporation, by its attorneys, Mr. Abbott, Mr. Boggs and Mr. Peterson, who appear only for purpose of protecting against the holding of this hearing, and the assessing officers of Morgan County and all matters and things herein are submitted to H. S. Bales, Agent of the State Tax Commission, who after hearing the evidence and proofs offered finds that the Texas Empire Pipe Line Company had in Morgan County and taxable therein as of June 1st, 1929, certain personal property to-wit: fifteen

carloads of pipe material for the construction of an oil pipe line in said county, of the actual value of twenty-five thousand dollars ($25,000) and the lawful valuation of said property for purposes of taxation as of the first day of June, 1929, was and is the said sum of $25,000 and that I have placed the same on page eighty of this record by proper description and have set opposite such description the lawful valuation of said property for taxation.

"I further find that there was no return of property made by said company for said year, that the county assessor had made assessment on his own view and that the county board of equalization had made no assessment of such omitted property.

"I, H. S. Bales, Agent of the State Tax Commission, hereby certify that I have this day reviewed the assessment rolls of Morgan County and that the above and foregoing is a true record of my acts and findings.

"Given under my hand at Versailles, this the 14th day of July, 1930.

"H. S. Bales, Agent,
"State Tax Commission."

The foregoing constitute a substantial compliance with the requirements of above Section 9855, Revised Statutes 1929, and the informalities complained of do not invalidate the assessment. [Sec. 9791, R. S. 1929; State ex rel. v. Wilson, 216 Mo. 215, 287, 115 S. W. 549; Dickson v. Rouse, 80 Mo. 224; 26 R. C. L. 357; 37 Cyc. 1051.] Certainly respondent's interest is not such as would authorize him to require more, and his objection above noted is overruled.

Counsel for respondent further say:

"The respondent having delivered the tax books to the collector of revenue as required by law and not now having the books in his possession or control, cannot make the entries which relators desire, and therefore the writ should be denied."

It appears from respondent's return that on said 14th day of July, 1930, the said Bales reported his action to said State Tax Commission, which commission on July 24, 1930, entered an order approving the action of the said Bales, all as shown on Exhibit "D" attached to relator's petition; that thereafter, on the 26th day of July, 1930, the State Board of Equalization entered an order approving said action of the said Bales and of the State Tax Commission in assessing said property as appears by Exhibit "E" attached to relator's petition; and that all of said proceedings were duly certified to the Clerk of the County Court of Morgan County by the secretary of the State Tax Commission and ex-officio secretary of

the State Board of Equalization. Relators alleged in their petition that said orders and proceedings were thus certified to the county clerk on July 30, 1930. The allegations of relators' petition were met by a general denial contained in respondent's return, but in mandamus a general denial is not a sufficient traverse of the allegations of the writ. [State ex rel. v. Broaddus, 234 Mo. 331, 332, 137 S. W. 271; State ex rel. v. Allison, 155 Mo. 325, 328, 56 S. W. 467; State ex rel. Hudson v. Trammel, 106 Mo. 510, 515, 17 S. W. 502; State ex rel. Conran v. Williams, 96 Mo. 13, 18, 8 S. W. 771.] It further appears from respondent's return that on July 14, 1930, when the said H. S. Bales, as agent of the State Tax Commission, assessed the property as aforesaid, the tax books of said county had not been delivered to the collector of revenue of said county for collection, and it is nowhere alleged in said return that they had been so delivered when the aforesaid orders and proceedings were certified to him by the secretary of the State Tax Commission and ex-officio secretary of the State Board of Equalization as aforesaid. The fact, as further pleaded in this return, that prior to July 14, 1930, the county assessment rolls had been passed upon and approved by both the county and State Boards of Equalization was no bar to subsequent action of the State Tax Commission approved by the State Board of Equalization.

From the allegations of relators' petition and respondent's return it is thus apparent that on or about July 30, 1930, and before respondent had made out said tax books and delivered them to the county collector, respondent was duly notified that. the action of the State Tax Commission with reference to the assessment here in question had been approved by the State Board of Equalization. The action of the State Tax Commission in making this assessment thus became final and it thereupon became respondent's duty to extend the taxes in accordance with the assessment so made and approved. [Sec. 9855, R. S. 1929, supra.] Instead of discharging this plain ministerial duty respondent has apparently taken it upon himself to determine the constitutionality of statutes prescribing such duties, and here baldly states in his return that ''he has extended no taxes upon the tax records of Morgan County, Missouri, against the Texas-Empire Pipe Line Company upon the property assessment made by H. S. Bales, as aforesaid, and that he has refused to extend taxes upon said assessment.'' We have already indicated that he had no right to do this and such action clearly brings him within the purview of the extraordinary writ of mandamus, the force of which he now seeks to evade by pleading his own unlawful act in delivering the tax books to the county collector without first discharging his duty in the premises. Section 9876, Revised Statutes

1929, provides that ''as soon as the assessor's book shall be corrected and adjusted, the clerk of the county court, except in St. Louis City, shall, within ninety days thereafter, make a fair copy thereof, with the taxes extended therein, authenticated by the seal of the court, for the use of the collector; . . .''

However, respondent's wrongful act in delivering the tax books to the collector without computing and extending the taxes on the assessment here in question will not deprive relators of the relief sought in this proceeding. The prayer of relators' petition is that the court ''grant its writ of mandamus directed to the respondent, commanding and requiring him as Clerk of the County Court of Morgan County, Missouri, to compute and extend the taxes levied by lawful authority in Morgan County, Missouri, and by the State of Missouri, for the year 1930 against said property of said corporation upon the valuation thereof as found, fixed and assessed by said agent of the State Tax Commission and approved by said State Tax Commission and by the State Board of Equalization of the State of Missouri, and for such other orders, judgments and decrees in the premises as may be just and proper.'' Section 9878, Revised Statutes 1929, thus provides for the making of a supplemental tax book:

''When for any cause there has been a failure to levy the state, county, school or other taxes, or any portion thereof, or to extend and authenticate the same for the use of the collector, or to make out and deliver to the collector a proper tax book for the collection of the same, as required by law, in any county for any year or years, the clerk of the county court of such county for the time being, when so required for such state taxes by the state auditor, and for such county, school or other taxes by the county court, shall make a supplemental tax book for such year or years. . . .''

Section 9856, Revised Statutes 1929, empowers the State Tax Commission as follows:

''. . . The state tax commission is hereby given any power statutory law confers on revenue officers necessary to make effective and complete the assessment and collection of the revenue, and may do any and all things necessary in compliance with existing statutes to perfect, complete and make effective the assessment and collection of the revenue.''

. In the situation disclosed by respondent's return we may treat the commencement of this suit as a request on the part of the State Tax Commission, in the exercise of the power thus conferred upon it, for respondent to make out and deliver to the county collector such supplemental tax book showing computation and extension of taxes as above prayed.

Respondent finally invokes the general rule that mandamus will not lie unless there has been a proper demand and performance refused. While respondent, in Paragraph IX of his return, alleges that "he has never been directed or ordered to extend taxes against the assessment made by H. S. Bales, agent for the State Tax Commission," he also alleges in paragraph VII of his return that "he has refused to extend taxes upon said assessment." It would seem that the latter allegation implies that demand was made, and that the return as a whole fails to traverse the positive allegation in relators' petition that demand was made. However this may be, many cases hold that, as in this case, where the duty sought to be enforced is of a public nature affecting the people at large and there is no one especially empowered to demand performance, no demand is necessary as a condition precedent to the issuance of a writ of mandamus to compel performance. [38 C. J. 577; 18 R. C. L. 123, sec. 37; State ex rel. v. Stuckey, 78 Mo. App. 533, l. c. 545; State ex rel. v. Wilson, 158 Mo. App. 105, l. c. 118, 139 S. W. 705; People v. Green, 281 Ill. 52, l. c. 57; Murphy v. City, 298 Ill. 66, l. c. 71.]

For the foregoing reasons it is ordered that peremptory writ of mandamus be awarded herein. All concur.