THE STATE ex rel. FREDERICK D. GARDNER et al., Constituting STATE BOARD OF EQUALIZATION, v. DAVID H. HARRIS, Judge of Circuit Court.

In Banc, January 29, 1921.

1. **TAXATION: Classification of Properties: Powers of State Board: Individual Reduction.** The State Board of Equalization, in equalizing the assessments of properties for purposes of taxation as made by the county officers in the several counties, deals with the county as a whole, and equalizes the different county assessments with one another, according to classes, such as banking corporations, bonds and note, horses, mules, cattle, etc.; but it does not have power to equalize the assessments upon different members or parcels of a class in the county. The County Board deals with individual assessments in the county, and equalizes or adjusts the valuations of different parcels or members of the class therein. The State Board, in fixing the total valuation of the properties of banks in a county, cannot take into consideration a reduction in the total assessment of the stock of a certain bank previously made by the County Board.

2. ————: **Valuation by State Board: Change By Circuit Court or County Clerk: Erroneous Recital: Surplusage: Harmonious Judgment.** The County Clerk has no power to change the valuation of property made by the State Board; nor can the circuit court change such valuation in a proceeding to which the State Board is not a party. But where the County Board reduced the assessment against a certain bank as made by the County Assessor, and

State ex rel. Gardner v. Harris.

afterwards the State Board reduced the valuation of bank stock in the county to sixty per cent of the valuations made by the County Board, and thereafter the County Clerk, in making the extensions against said bank, disregarded said reduction by the County Board, an erroneous recital in the judgment of the circuit court that the County Clerk changed the total bank assessment certified to him by the State Board may be considered as surplusage and disregarded upon *certiorari* directed to said Circuit Judge, and being so disregarded, if the other findings disclosed by the record show a correct conclusion and that the County Clerk in making the extensions did include in his calculations said reduction previously made by the County Board, the judgment correcting the error in the ministerial act of the clerk will not be quashed, the findings upon which the judgment was based being ample in terms to sustain it.

*Held*, by GRAVES, J., dissenting, that the judgment of the circuit court, in plain and unmistakable language, changes, or undertakes to change, the judgment of the State Board of Equalization in a matter to which it was not a party, in that it "doth order, adjudge and decree that the records of the assessment of the property of Boone County, as equalized and adjusted by the State Board and certified by the secretary of said board, be corrected," etc.; and therefore said judgment should be quashed, since said circuit court had no power to change or alter the records of valuations made by the State Board.

3. ———: Double: Stock of Realty Company Held By Bank. The stock of a realty corporation, owned and held by a bank, cannot be assessed as a part of the properties of the bank, for that would be double taxation.

4. JUDGMENT: Certiorari: Erroneous Recital. The validity of a correct judgment of the circuit court is not affected by erroneous recitals therein, and will not be quashed on *certiorari*.

5. TAXATION: Reduction of Assessment: Interest of State Board. If the valuation fixed by the State Board of Equalization upon bank stocks in a county was not reduced or changed by the judgment of the circuit court, it has no interest in the judgment correcting the extension of the assessment against a certain bank.

6. ———: Certiorari To County Clerk. The circuit court by its writ of *certiorari* has power to quash the record made by the county clerk in the matter of extending tax assessments against a certain bank where the defects appear on the face of the assessment record.

## *Certiorari.*

WRIT QUASHED.

*Frank W. McAllister* Attorney-General, and *John T. Gose,* Assistant Attorney-General, for relators.

(1)  *Certiorari* is the appropriate remedy. State ex rel. v. Weithaupt, 254 Mo. 329.  (2)  The Circuit Court of Boone County, had no jurisdiction over the State Board of Equalization. State ex rel. v. Hall, 221 S. W. 712.  (3)  The territorial jurisdiction of a circuit court's superintending control being limited by the Constitution to the limits of such court's district, and the State Board of Equalization not being found, or capable of being found, therein, it would appear to be constitutionally beyond the power of such circuit court to alter, modify or change any order and judgment of the State Board of Equalization. Sec. 23, art. 6, Mo. Constitution; State ex rel. v. Hall, 221 S. W. 708.  (4)  Even if the Circuit Court of Boone County had the power and authority to review, correct, change or alter the judgment and order of the State Board of Equalization, it certainly could not do so in a suit wherein such State Board was not made a party, or notified of the proceeding. State v. Bank, 213 S. W. 817.  (5)  The judgment is not responsive to the issues presented in the proceedings. Schneider v. Patton, 175 Mo. 723.  The suit was brought to compel the County Clerk to change his personal property book to conform to the order of the State Board of Equalization. The judgment finds that the clerk's books were in conformity with the order of the State Board of Equalization and then proceeds to reform the order of the State Board. The review and correction of the judgment of the State Board was not a matter within the pleading. But the subject-matter of the judgment is the alteration and correction of the judgment of the State Board, and the judgment directing the County

Clerk to change his books is based upon, and wholly incidental to, such subject-matter of the judgment.

·McBaine, Clark & Rollins for respondent.

(1)   The finding of the State Board of Equalization was not altered by the Circuit Court of Boone County. No attempt was made to alter it. It wasn't even claimed that the State Board was before the circuit court. Nor could it have been brought before that court. State ex rel. v. Hall, 221 S. W. 708; State ex rel. v. Brinkop, 238 Mo. 298; State ex rel. v. Reynolds, 224 S. W. 401.   (2) The stock in the Missouri corporations owned by the Exchange National Bank was not taxable against the bank or its stockholders. State v. Lesser, 237 Mo. 310; State ex rel. v. Brinkop, 238 Mo. 298; Sec. 11357, R. S. 1909; Sec. 5219, U. S. Revised Statutes; Owensboro Bank v. Owensboro, 172 U. S. 664; Mercantile Natl. Bank v. New York, 121 U. S. 138; Bank of California v. Richardson, 248 U. S. 476; Hannibal Railroad v. Shockett, 30 Mo. 550; Mo. Constitution, art. 10, secs. 3 and 4; Valle v. Zeigler, 84 Mo. 214.   (3) The County Board of Equalization had full power and authority to relieve the Exchange Bank, as it did, of the illegal assessment of this corporation stock. Sec. 1140, R. S. 1909; Word v. Board of Equalization, 135 Mo. 309; State ex rel. v. County Court, 47 Mo. 594; State ex rel. v. Lathrop, 50 Mo. 134; State ex rel. v. Board of Equalization, 256 Mo. 455.   (4) The State Board of Equalization had no authority to do anything except equalize the value of the bank stock in all the counties of the State. It is presumed that it acted legally, but if it did not, the County Board had exclusive power to fix and determine what proportion of the total the Exchange National Bank should pay. State ex rel. v. Merchants Bank, 213 S. W. 815; Sec. 11412, R. S. 1909; State ex rel. v. Vaile, 122 Mo. 33.   (5) The State Board not being a party to the proceeding in the circuit court and not being affected by

its finding in any way, was not a proper relator and the writ heretofore issued in this court should be dismissed. State ex rel. v. County Court, 237 Mo. 469; State ex rel. v. Fraker, 158 Mo. 445. *Certiorari* was the appropriate remedy to quash the record to the local tax officials who did not obey the legal orders of the County Board of Equalization, Art. 6, sec. 23, Mo. Constitution; Sec. 3863, R. S. 1909; State ex rel. v. County Court, 47 Mo. 594; State ex rel. v. Downing, 50 Mo. 134; State ex rel. v. Brinkop, 238 Mo. 298.

WALKER, C. J.—This is an original proceeding in *certiorari* instituted in this court by the Governor and others, constituting the State Board of Equalization, to require David H. Harris, as Judge of the Circuit Court of Boone County, to certify to the Supreme Court the records on file in said circuit court in a certain cause determined therein, in which the State of Missouri, at the relation of the Exchange National Bank, was the relator, and the members of the County Board of Equalization of Boone County were the respondents.

A summary of the relevant portions of the petition filed herein by the State Board of Equalization is as follows:

1st.    That neither the State Board of Equalization nor any of its members was served with process in said cause or made a party thereto;

2nd.    That the Circuit Court, by its judgment, changed the judicial order of the State Board of Equalization, without affording relators an opportunity to be heard and without having before it the records of the State Board of Equalization relating to the equalization and adjustment of the assessed valuation of property in Boone County;

3rd.    That if the Circuit Court had the power to change the record of the State Board of Equalization it could do so only in a direct proceeding for that purpose wherein relators were made parties and the record of the board was before the court for examination;

4th. That the Circuit Court has no jurisdiction to change, alter, modify and correct the judgment, assessment, or equalization of assessments of property in Boone County, Missouri, made, determined and ordered by the State Board of Equalization;

5th. That the judgment is an attempt on the part of the Circuit Court of Boone County to exercise superintending control over the State Board of Equalization;

6th. That the judgment attempting to correct and change the record of the State Board of Equalization in regard to the assessment of bank stock in Boone County is in contravention of Section 23 of Article VI of the State Constitution; and against public policy; and the judgment is not within the pleadings;

7th. That the Circuit Court of Boone County had no jurisdiction of the subject-matter of the judgment so far as it relates to a change in, or alteration of, the judgment or order of the State Board of Equalization in the matter of the assessment of property or bank stock within Boone County;

8th. That the judgment is an attempt to do indirectly that which the court has no power to do directly;

9th. That the rendition of the judgment by David H. Harris, as Judge of the Circuit Court, was an usurpation of judicial power and in excess of any jurisdiction the circuit court had therein.

Upon the filing of said petition the Supreme Court issued its writ of *certiorari* directing the judge of the Circuit Court to certify to this court a full, true and complete copy of its record and proceedings in the cause on file in and determined by said Circuit Court.

For his return the circuit judge has filed with the clerk of this court a certified copy of the record and proceedings of the cause determined in his court. Such portions of the return as are necessary to an understanding and determination of this case will be inserted and considered in their relevant order.

Upon the filing in this court of the return, relators filed a motion to quash same based upon the same grounds stated in the petition, which motion was overruled. Respondent, alleging the converse of the grounds stated in relator's motion, moved to dismiss the proceedings and quash the writ. This motion was also overruled.

In June, 1920, the Exchange National Bank of Columbia filed a petition for a writ of *certiorari* in the Circuit Court of Boone County against the members, naming them, of the County Board of Equalization of Boone County as respondents. After the usual formal allegations as to the character of the relator and the official status of the respondents, it is alleged that on the 5th day of April, 1920, the County Board assessed the stock of the Exchange National Bank of Columbia, exclusive of real estate, at $168,142; that on June 1, 1920, the State Board of Equalization ordered that the taxable property in Boone County be extended upon the tax books and assessed at 60 per cent of the assessed valuation of same; that the assessed valuation of all of the bank stock in Boone County be fixed at $808,240; that 60 per cent of the assessed valuation of the stock of said Exchange National Bank, exclusive of its real estate, as theretofore fixed by the County Board of Equalization, was $100,885, and that an assessment upon this basis would be upon the same basis and in the same manner that the assets of other banks in Boone County were assessed against their stockholders; that the Clerk of the County Court of Boone County, as *ex officio* secretary of the County Board, without authority of law, extended upon the personal assessment records of Boone County for 1920 the taxable valuation of said Exchange National Bank at $121,885; that he had no authority to extend the assessed valuation of said bank at such amount; that the proper assessment upon the basis as determined by the County Board and the State Board is $100,885; that the assessment as extended by the said County Clerk is oppressive and discriminatory.

Following this is an allegation that $30,582 of the taxable valuation of said bank as fixed by the County Board consists of real estate on which there is a building used by said bank in the conduct of its business, the title to which real estate is in the Exchange Realty Company, a corporation, the capital stock of which is owned by said bank and is not taxable as a part of its assets, but is the separate property of said realty company, to which it is assessed; that $5000 of the stock of the Thilo Realty Company, a corporation, is owned by said bank and is not taxable as a part of the assets of said bank, but is the separate property of said realty company, to which it is assessed; that respondents in attempting to assess the valuation of said stock against the relator bank are discriminating against it by compelling it to pay taxes on stock owned by it in said realty companies, thereby taxing the stock of said realty companies twice.

Wherefore it is prayed that the circuit court issue its writ of *certiorari* directed to said respondents as members of said County Board to produce before said court the records, etc., in relation to the assessment of the property of said bank, and the assessment of the stock of said realty companies, that the court may adjudicate upon the legality of such proceedings and assessments.

For their return respondents, as members of the County Board, produced and submitted for the court's inspection the books, papers and record entries concerning the valuation and assessment for purposes of taxation of the property of said bank and the realty companies. From the evidence thus adduced the following facts appear:

On February 14, 1920, the Assessor of Boone County assessed the stock of the Exchange National Bank at $207,174. Of this amount $30,582 was represented by stock owned by said bank in the Exchange Realty Company; this company was a separate corporation organized under the laws of this State; that it owned an

office building and banking rooms in the City of Columbia, occupied by the relator, the Exchange National Bank, as a tenant. In addition there was also assessed against the stockholders of the Exchange National Bank $5000 worth of stock owned by the Bank in the Thilo Realty Company, a corporation organized under the laws of this State. This company owned a store building in the City of Columbia and its stock had been acquired by the Exchange National Bank in the settlement of an indebtedness; that the Assessor of Boone County included as a part of the assessed valuation of the stock of the Exchange National Bank the stock of these two realty companies, which owned no other real estate than that located in the City of Columbia, and that the assessment records of Boone County showed that this real estate was also assessed against these two realty companies; that prior to the 5th day of April, 1920, the assessment of the property of Boone County was certified by the Clerk of the County Court to the State Board; in this certificate the Assessor's valuation of the bank stock of the Exchange National Bank was placed at $207,174; that on the said 5th day of April, 1920, the County Board met in regular session at Columbia to hear complaints and to equalize the property in said county. At this meeting the Exchange National Bank filed a complaint with the board alleging that in the assessment of its stock by the Assessor of Boone County there was included the sum of $35,582 as the value of stock owned by the bank in two realty companies and that it should be relieved from this assessment and the assessment of its stock reduced in this amount. The County Board investigated the facts and reduced the assessed valuation of the stock of the bank in said sum so that the assessment as equalized was $168,142; that on June 1, 1920, the State Board equalized the assessment of all of the property in the State for purposes of taxation and ordered that the taxable property of Boone County be assessed and extended on the tax books at 60 per cent of the assessed valuation of same;

that the total assessed value of all of the bank stock in
Boone County be fixed at $808,240; that of said amount
$168,142 was the value of the stock of said Exchange
National Bank as theretofore determined by the County
Board and constituted the basis for the 60 per cent valu-
ation for the purpose of the assessment of said Exchange
National Bank stock; that upon receiving the certificate
of the action of the State Board and in extending the
values of the bank stock of said county for taxation the
Clerk of the County Court of Boone County proceeded to
extend the assessment of the property of the county upon
the assessment records and in so doing extended the
assessment against the stockholders of the several banks
in the county. Instead of taking $168.142 as the assessed
value of the stock of the Exchange National Bank as the
basis on which to calculate the 60 per cent valuation for
assessing said stock, the clerk took as a basis the sum of
$207,174, the original valuation by the Assessor of Boone
County of said stock which had been reduced by the
County Board as aforesaid, and it was of this action
that complaint was made by the Exchange National
Bank in the proceeding before the County Board when
the valuation of the stock was reduced; that if the 60
per cent valuation of the stock of said bank had been
based on the sum of $168,142, the value of said stock
under the order of the State Board would have been,
for taxable purposes, $100,185, instead of $121,835, which
last valuation was obtained by taking the sum of $207,174
as a basis.

The burden of the action before the Circuit Court
was that the records be so corrected as to conform to the
assessment of the bank stock as fixed by the County Board
and the valuation of the entire bank stock of the county
as fixed by the State Board. No attempt was made to
have the Circuit Court change the valuation of the bank
stock of the county as fixed by the State Board and as
certified by it to the County Board, nor was that valua-
tion changed. The only question submitted to the Circuit

Court, therefore, and determined by it, was as to the correctness of the action of the Clerk of the County Court in using the sum of $207,174 as the value of the stock of the Exchange National Bank instead of $168,142 as a basis from which to determine the taxable value of the stock of said bank. Only to this extent and in the manner stated was the record ordered corrected. The Circuit Court's findings and judgment were in substance as follows:

"The Court . . . doth find that the State Board of Equalization determined and assessed the valuation of the bank stock of Boone County at the total sum of $808,240; that said total sum was by said State Board intended to be sixty per cent of the total assessed valuation of the banks of Boone County, as certified to said board by the County Clerk of said county; that in thus fixing the total valuation and assessment of the banks of Boone County, the State Board failed and neglected to take into consideration a reduction of $35,582 previously made in the total assessment of the Exchange National Bank by the County Board of said county on account of a double assessment of the property of said bank in that amount; and which said action on the part of the County Board was duly certified to said State Board; and that by reason of the error aforesaid on the part of said State Board, respondent Davis, as Clerk of the County Court of Boone County, has extended upon the personal assessment book of Boone County for the year 1920, against relator, Exchange National Bank, a total assessment of $122,228, which said total sum is $21,343 in excess of the just, true and correct amount; that the respondent Davis in the discharge of his ministerial duties as Clerk of the County Court was without authority to change said total bank assessment so certified to him by the State Board, as aforesaid, or to extend the assessment of the said bank in a sum other than that fixed and extended by him, without the order of this court or some other competent tribunal authorizing and directing him so to do.

"Wherefore, the premises considered, the court doth order, adjudge and decree that the records of the assessment of the property in Boone County, Missouri, as equalized and adjusted by the State Board and certified by the secretary of said board on the 1st day of June, 1920, be corrected, in the following manner, to-wit:

"That the total assessed valuation of the bank stocks in Boone County, Missouri, as determined, adjusted and equalized by said Board of Equalization be reduced in the sum of $21,343, which said sum of $21,343 shall be taken wholly from the assessed valuation of the stock of the Exchange National Bank, relator herein, and that the said clerk be and he is hereby directed to extend the assessment upon the personal assessment book for Boone County for the year 1920 against the stockholders of said bank in the total sum of $100,885, which said total assessed valuation of said bank shall be by said County Court prorated and assessed against the several stockholders of said bank upon the personal assessment book of Boone County in proportion to the amount of stock owned by the several stockholders in said bank, and that the personal assessment book and records of Boone County for the year 1920 be corrected as to the Exchange National Bank and the stockholders thereof, in the manner and in the form aforesaid."

I. That there are numerous erroneous recitals in this judgment it must be admitted; whether they are of such gravity as to justify the quashing of the judgment may be best determined by a careful analysis of their terms. The court finds (1) that in fixing the total valuation and assessment of the property of the banks of Boone County for the purpose of taxation, the State Board failed to take into consideration a reduction of $35,582 previously made in the total assessment of the stock of the Exchange National Bank by the County Board. Not only did the

Reduction of Assessments.

286 Mo.—18

State Board not do this, but if it had done so it would have been in excess of its authority, its province and power being confined to equalizing the values of classes of property among the different counties of the State for the purpose of taxation. The basis for such equalization is obtained from the abstracts of all of the taxable property in the State as furnished by the clerks of the county courts. The statute is explicit on this subject, and is to this effect: "And the board shall . . . classify all personal property as follows: First, banking corporations; second, railroad corporations; third, street railway corporations; fourth, all other corporations; fifth, bonds, notes and evidences of indebtedness; sixth, horses, mares and geldings; seventh, mules; eighth, asses and jennets; ninth, neat cattle; tenth, sheep; eleventh, swine; twelfth, farm implements and all other personal property. And the board shall proceed to equalize the valuation of each class thereof among the respective counties of the State in the following manner:

"First—It shall add to the valuation of each class of the property, real or personal, of each county which it believes to be valued below its real value in money such per centum as will increase the same in each case to its true value.

"Second—It shall deduct from the valuation of each class of the property, real or personal, of each county which it believes to be valued above its real value in money, such per centum as will reduce the same in each case to its true value." [Sec. 11412, R. S. 1909.]

From this it will be seen that an authorized equalization by the State Board is limited to classes and that its power cannot be extended to the valuation of different pieces of property or that of a particular person.

As was said by this court in Trust Company v. Schramm, 269 Mo. 495: "It is not questioned that, under the provisions of this section (11412) the State Board of Equalization can equalize according to *classes* as it

did in the instant matter. This power was expressly conferred by the amendment of 1899, prior to which time its power was limited to equalizing among the different counties and not between classes.''

In State ex rel. Wyatt v. Vaile, 122 Mo. 33, cited with approval in the Schramm case, this court, in construing this statute as it then existed, said, at page 46:

''The meaning of this statute, it seems to us, is clear. It gives the board power to equalize the value of property, real or personal, among the counties, but it gives that board no power to go into any county and equalize the value of parcels or classes of real estate therein. That is a matter confided by the law to the County Board of Equalization. The powers of the two boards are entirely different. The State Board deals with the entire county assessment on real as on personal property, while the County Board deals with individual assessments. The State Board may, no doubt, raise or decrease by a uniform per centum the valuation on all lands in a county, without changing the valuation on personal property; or it may raise or decrease by a uniform per centum the valuation of all personal property in a county, without disturbing the valuation of real prpoerty; but it has nothing to do with adjusting the values of different parcels of land in the same county. Inequalities between parcels of land or classes of land in the same county are matters within the exclusive jurisdiction of the County Board. The State Board has nothing to do with them. [St. Joseph Lead Co. v. Simms, 108 Mo. 222; Wells, Fargo & Co. v. Board of Equalization, 56 Cal. 194.] The first clause of that part of the Constitution before quoted is no doubt self-enforcing, but it is no broader or more comprehensive than the statute.''

This well-defined limitation of the power of the State Board applies with equal force to the present statute as to that existing prior to 1899, the amendment then enacted, as stated, only affecting the classes equalized,

but not in any wise conferring other power upon the board.

. The court further finds (2) that the County Clerk changed the total bank assessments certified to him by the State Board. This, as is shown by the other findings and the judgment rendered thereon, was not done. The total valuation of the bank stock of Boone County as certified to by the secretary of the State Board was in no particular changed, nor even attempted to be changed. What was really done was to make the assessment of the bank stock of the Exchange National Bank conform to the valuation placed thereon by the County Board, viz., $168,142, instead of the value originally placed thereon by the Assessor, which had erroneously included $35,582, the value of stock in other corporations owned by the bank but separately assessed. The value of the stock of the bank by the County Board after it had been informed of the error in the Assessor's valuation and had corrected same, while not affecting the total valuation of the bank stock of the county, established the correct basis upon which to calculate the sixty per cent value of said stock authorized by the State Board for the purpose of taxation. In this connection, we are concerned only with the court's finding as not constituting a correction of the action of the State Board and not with the legality of the board's order in fixing a per cent of the actual value of property as the basis for the taxation of same. The correction thus made by the County Board was necessary to avoid the double taxation of the property of the realty companies, whose stock, although separately assessed, had been by the Assessor erroneously included in the assessment of the bank's stock. This course was in conformity with the requirements of the statute (Art. 3, Chap. 117, R. S. 1909), and has received judicial sanction under a similar state of facts in State ex rel. Campbell v. Brinkop, 238 Mo. 298 and the error could not have been otherwise corrected. Unless, there-

*Margin note:* Erroneous Recital: Harmonious Judgment.

fore, the erroneous and unnecessary recitals so affect other findings authorized by the facts and the law as to prevent the latter from harmoniously sustaining the judgment, then it should not be quashed.

We said as much in Barnard v. Keathley, 230 Mo. l. c. 236, in which we held that where a decree does not stand on a finding unsupported by the evidence, but rests upon other considerations of law and fact, the erroneous findings will not vitiate the decree.

In addition, therefore, to those criticized, what other finding, if any, is disclosed by the record of this judgment? Among others is the following: That the Clerk of the County Court of Boone County has extended upon the personal assessment book of said county for the year 1920 against the Exchange National Bank a total assessment of $122,228, which is $21,343 in excess of the true, just and correct amount, and that said clerk in the discharge of his ministerial duties was without authority to change the total bank assessment so certified to him or to extend the assessment of said bank in a sum other than that extended by him without the order of the Circuit Court or some other competent tribunal. Following this finding the court entered a judgment in conformity therewith which reduced, not the total valuation of the bank stock of Boone County, but that of the Exchange National Bank; and the clerk was directed to extend the value of said bank stock for taxation upon the personal assessment book of Boone County for the year 1920 against the stockholders of said bank in the total sum of $100,885. This amount is sixty per cent of the corrected valuation placed upon the stock of said bank by the County Board in the proceeding heretofore referred to. The judgment thus rendered did not, therefore, correct or attempt to correct the total valuation of the bank stock of Boone County by the State Board but was limited as stated. The finding upon which the judgment was based being ample in its terms to harmoniously sustain the judgment, the erroneous recitals or findings did not,

as held in the Barnard case, supra, affect the same. It is not necessary to sustain this conclusion that we refer to holdings elsewhere to the effect that the findings of a judgment as generally considered constitute no part of same; this, however, may be held as regards the erroneous findings in this case, and they may be rejected as surplusage. [Cook's Estate, 77 Cal. 220, 11 Am. St. 267, 1 L. R. A. 567; Judge v. Powers, 156 Iowa, 251, Ann. Cas. 1915B, 280; Stewart v. Atl. Beef Co., 93 Ga. 12, 44 Am. St. 119; 15 R. C. L. pars. 3, 35.]

II.  The propriety of the proceeding by *certiorari* in the Circuit Court is sustained by the ruling in the Brinkop case, supra.  In that case the defendant Brinkop, as president of the Board of Assessors of the City of St. Louis, had assessed against the American Central Insurance Company a number of shares of stock it owned in certain banks and trust companies located in the City of St. Louis, and this court, in an opinion by Justice VALLIANT, held that the stock in other corporations owned by the insurance company should not be assessed against it.  The court, in discussing the question, said:

Double Taxation.

"We hold that to levy a tax on the shares of stock in the state and national bank and trust company, and then to take those shares into account in estimating the tax to be levied on relator's shares of stock in the insurance company, would be double taxation, which our statutes do not authorize.

"The same principle applies to the shares of stock owned by the insurance company in the domestic manufacturing corporations, the only difference in fact being in the mode of assessing or collecting the tax; that is, instead of reaching the property through the shares of stock, the tax is levied directly on the property."

And so finally the court held: "We hold that the assessment complained of in relator's petition is illegal, and the record thereof should be quashed.  It is so ordered."

This was in substance what was done by the Circuit Court of Boone County and the validity of its judgment, as we have shown, should not be affected by the erroneous recitals therein. In a late case, State ex rel. Hayes v. Ellison, 191 S. W. 49, decided by this court December 21, 1916, it was held, in a *certiorari* proceeding, that the portion of the opinion of a court of appeals would not be quashed where its judgment was correct, although an erroneous statement appeared therein in regard to the character of the service, the court of appeals not having based its argument or conclusion upon the question of the character of the service. BLAIR, J., speaking for the court in this case, at page 35, said:

**Correct Judgment.**

"In referring to the service in the condemnation case, the Court of Appeals stated that there was personal service upon relatrices as well as service by publication. Relatrices contend service was by publication and by service in the case of each relatrix, upon a member of her family over the age of fifteen years. It is urged the court thereby held such service upon the member of the family to be personal and that this court in its last previous ruling held such service to be constructive. [Feurt v. Carter, 174 Mo. 289; 73 S. W. 576.] We do not think it necessary to discuss this matter, since the Court of Appeals, when it stated there was personal service, based no argument and no conclusion upon any distinction between personal and constructive service. The argument of the opinion made in that connection is as well supported by the fact of service on members of the families of relatrices as upon direct personal service upon them. The conclusion they reached could not be affected by any difference between the two kinds of service. In such circumstances, the inadvertence, if any, cannot be made the basis of quashing any part of the record.

"A careful examination of the various assignments discloses there is no reason advanced warranting us in

quashing any part of the record of the Court of Appeals. Our writ is quashed.''

III. We have adverted to the fact that the valuation fixed by the State Board of the Boone County bank stock was not reduced by the proceeding in the circuit court, and hence said board had no interest therein. This question was raised by respondent's motion to quash the preliminary writ, and authority for the same is found in State ex rel. Powell v. County Court, 237 Mo. 1. c. 469, and State ex rel. Underwood v. Fraker, 168 Mo. 445.

*Interest of State Board.*

IV. The authority of the Circuit Court of Boone County by writ of *certiorari* to quash the record made by the Clerk of the County Court in this tax matter is further attested by Article 6, Section 23, Constitution of Missouri; Section 3863, Revised Statutes 1909; State ex rel. Taylor v. St. Louis County Court, 47 Mo. 594; State ex rel. Lathrop v. Dowling, 50 Mo. 134; State ex rel. Van Raalte v. Board of Equalization of the City of St. Louis, 256 Mo. 455. In the foregoing cases the writ was issued by the circuit courts to review the validity of the action of boards of equalization and officers employed by law to levy taxes. The rule is well established in these cases that defects appearing upon the face of the record by inferior taxing bodies may be reached by the extraordinary writ of *certiorari*.

*Certiorari to County Clerk.*

The foregoing reasoning, if not sufficiently clear as heretofore expressed, is not to be understood as in any wise approving the record of the Circuit Court in its erroneous recitals and findings which under any interpretation may be held to change or to attempt to change, alter or, affect the orders of the State Board of Equalization; but to be limited to the findings and orders of the Circuit Court in its judgment as to the action of the County Board of Equalization.

V.   The conclusions which follow are that the State Board's valuation of all of  the bank stock in  Boone County was not disturbed by the judgment of the Circuit Court; that the County Clerk should have followed the order of the  County Board of  Equalization in re-ducing the Exchange National Bank's assess-ment; that the County Board in decreasing it followed the law of Missouri as laid down in the Brinkop case; that *certiorari* from the Circuit Court to the County Clerk was the proper remedy; that recitals, findings and the seeming conclusion of the Circuit Court in regard to the orders of the State Board were improper and unau-thorized; that the Circuit Court's action did not reduce the State Board's assessment; and that although the State Board was not made a party, and it was not nec-essary that it be made a party to the proceeding in the Circuit Court, on account of the erroneous findings and unnecessary conclusions of the Circuit Court, its judg-ment, in so far as it assumes to change, alter or effect the orders of the State Board, be and the same is here-by quashed; but in all other respects that our writ issued herein be quashed.

Conclusions.

It is so ordered.   All concur except *Graves, J.,* who dissents in separate opinion.

GRAVES, J. (dissenting).   I dissent from this opin-ion.   The judgment of the circuit court should be quashed, because it says:

"Wherefore, the premises considered, the court doth order, adjudge and decree that the records of the assess-ment of  the property in Boone County, Missouri,  as equalized and adjusted by the State Board and certified by the Secretary of said Board on the 1st day of June, 1920, be corrected, in the following manner, to-wit:"

Following the foregoing is the manner in which the judgment of the State Board of Equalization shall be changed.   The judgment is one which clearly changes, or undertakes to change, the judgment of the State Board

of Equalization. It so says upon its face, and no argument as to its meaning can change the situation. Its words speak for themselves. The judgment is not in separable parts, whereby we might be enabled to quash a part and sustain a part. When it reaches the point that the judgment of the State Board of Equalization can be cut up root and branch, and changed by a circuit court, without such board being a party, we are destroying the whole system of our taxation. The judgment of the State Board of Equalization cannot be attacked collaterally, as we have universally held. Here it is attacked in a collateral proceeding. Not only so, but we have ruled that no circuit court has jurisdiction over the State Board of Equalization, except the Circuit Court of Cole County, where said board, as an acting body is domiciled. I therefore, most respectfully dissent.