## City of Louisville, et al. v. Young Men's Christian Association.

(Decided October 7, 1915.)

Appeal from Jefferson Circuit Court
(Chancery Branch, No. 1).

1. Taxation—Device to Evade Taxation.—It is not every transaction designed to escape taxation that may be condemned as a device to evade taxation. The question turns on whether or not the taxpayer has a legal right to do that which is done and whether or not the transaction is actually carried out or is a mere subterfuge.

2. Taxation—Public Charity—Sale of Lease and Option—Right to Tax the Purchaser.—A Young Men's Christian Association desiring to purchase new sites and build thereon offered for sale both the fee simple title to, and a lease and option on, certain real estate which it owned and which was exempt in its hands. The lease and option provided for a cash payment of $100,000 and for certain annual rental. It gave to the purchaser of the lease and option the right to buy at any time within fifteen years. For the fee simple title no bid was received. The lease and option was purchased. Held, in an action to enjoin the collection of taxes, that in view of the fact that the Association had the lawful right to sell the lease and option, and the further fact that the lease and option was not, in effect, a conveyance of the property but gave to the purchaser the mere right to buy at any time within fifteen years, the transaction could not be condemned as a mere device to escape taxation, even though the purpose of the sale of the lease and option was to increase the sum which the Association would receive from the property by relieving the purchaser of the burden of taxation until the option was exercised.

3. Taxation—Lease and Option—How Assessed.—The purchaser of a lease and option on certain property is assessable with the value of the lease and option and not with the property itself.

GEO. CARY TABB and PENDLETON BECKLEY for appellants.

ALEX. G. BARRETT, HELM BRUCE and BARRETT, ALLEN & ATTKISSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The Young Men's Christian Association of Louisville was the owner of certain real estate situated at the southeast corner of Fourth Street and Broadway in that city. On June 21st, 1913, William Heyburn purchased

a lease and option on the property. The property was assessed on September 1st, 1913, to the Young Men's Christian Association, while the lease and option was assessed to William Heyburn. The Association brought this suit to enjoin the collection of the tax, on the ground that the association was purely a public charity. Subsequently, the assessment was changed and the real estate itself assessed to William Heyburn. By amended petition, the Association asked for an injunction against selling the property for the collection of the bill against Heyburn. The city defended on the ground that the transaction between the association and Heyburn was a mere device to escape taxation, and that the so-called lease and option was, in effect, a sale and vested in Heyburn the title to the property. On final hearing, the chancellor adjudged that the real estate was not assessable to Heyburn, but that the option was assessable to him. The injunction was granted without prejudice to the right of the city to assess Heyburn for the value of his option. The city appeals.

The facts are these: The Main or Central Branch of the Young Men's Christian Association was located at Fourth and Broadway. In 1910, the directors of the Association decided to build the Central Branch and Railroad Branch on new sites and improve the Colored Branch. The sum of $400,000 was subscribed for this work. To purchase the new sites and erect buildings thereon, the directors determined to dispose of the old premises at Fourth and Broadway. It was estimated that this property would bring $250,000. New sites were purchased for the sum of $155,000. Contracts for the buildings thereon were let and work of construction begun in 1911. By the first of the year 1913, these contracts amounted to $435,000. In November, 1912, the paid subscriptions were exhausted. To meet further payments which were due on the building contracts, the Association borrowed $150,000, which was secured by mortgage on the premises at Fourth and Broadway and by the personal guarantee of Messrs. Heyburn, Starks and Atwood, three of the directors of the Association. At the time of these transactions there was a business depression in Louisville. The Board of Directors began, in September, 1912, to advertise the Fourth and Broadway premises for sale. No offer was received therefor. During the month of March, 1913, the subscriptions and

the $150,000 borrowed had been exhausted and it was necessary to raise $100,000 to meet certain payments then falling due. William Heyburn was the president of the Association and contributed largely of his means and time to the success of the new movement. In making their plans for the purchase of the new sites and buildings, Heyburn had represented to the directors that the property at Fourth and Broadway could be disposed of for $250,000. When it became necessary to raise the additional $100,000, he attempted to induce others to join in the purchase of the property, but without success. On April 25th, 1913, after all efforts to effect a sale of the property had failed, Heyburn made a written offer to the directors of the Association to bid at public auction the sum of $100,000 for a lease on the premises, including an option to buy for an additional $150,000. Thereupon, the directors other than Heyburn decided to offer the fee simple title to the property for sale at auction and immediately thereafter to offer for sale a lease and option on the property, and accept whichever offer the Real Estate Committee deemed best. The auction took place on June 2nd, 1913, after due advertisement and other efforts to get bidders present. The fee was first offered but no bids received. Heyburn's bid of $100,000 was the only one for the lease and option and was accepted. On June 21st, 1913, the lease and option was executed. By the instrument so executed, the premises were leased to Heyburn for a period of fifteen years. The consideration was $100,000 cash and an annual rental varying from $7,500 to $12,000, the rent being smaller for the first ten years and larger for the last five years, and varying somewhat with the rate of interest payable on the $150,000 mortgage. The lessee was given the privilege of discharging the rent by paying the mortgage interest and producing the mortgagee's receipt therefor. He was also given the right to erect improvements. These improvements became the property of the lessor but passed to the lessee if he exercised his option to buy. In consideration of the cash payment and the rent, the lessee was given an option to buy the property at any time during the term for $150,000. It was further provided that the lessee was to pay the taxes if any should ever become due during the term.

It is not every transaction designed to escape taxation that may be condemned as a device to evade taxa-

tion. The question turns on whether or not the taxpayer has a legal right to do that which is done and whether or not the transaction is actually carried out or is a mere subterfuge. For instance, a corporation, whose principal place of business is in a large city, cannot escape taxation therein by a mere amendment to its articles of incorporation changing its place of business to a small village, where the principal place of business continues at the same location and no change is actually made. On the other hand, a corporation may change its principal place of business, even though its purpose be to escape taxation, provided the change be actual and not a subterfuge. Inter-Southern Life Insurance Company v. Milliken, 149 Ky., 516. So, an individual taxpayer residing in a large city may, for the purpose of escaping city taxation, transfer his residence to the county and escape such taxation, provided the change is actually made. However, he will not be permitted to escape taxation if the change is not actually made but is a mere subterfuge. In the present case, it cannot be doubted that the Association, which owned the legal title to the property and in whose hands the property was not taxable because the Association was purely a public charity, had the legal right to sell either the property itself or a lease and option thereon, which would continue the exemption, and accept the best bid. We think it clear from the evidence that, because of the prevailing financial depression and the then non-productive character of the property, the fee simple title thereto could not be sold for anything like the sum which the association required and expected to realize out of the property. It is equally clear, we think, that Mr. Heyburn did not desire the property but merely proposed to purchase the lease and option for the sole purpose of assisting the Association. It may be conceded that the object of the lease and option plan was to increase the sum which the Association would receive, by relieving the purchaser of the burden of taxation during the continuance of the lease and option. The right of the city to tax the property as belonging to Heyburn turns, not to the purpose of the plan, but on whether or not the plan itself was lawful and was actually carried out, or was a mere subterfuge to escape taxation. In other words, it depends on whether or not the so-called lease and option was, in fact, a lease and option, or in effect, a conveyance of the property. To determine this

question, resort must be had to the instrument itself, and though it be considered in the light of the situation and circumstances of the parties, we are unable to see how it can be given an effect in law different from what its terms fairly import, even though it be conceded that, because of the large cash payment, the option be an exceedingly valuable one. The Association which had offered for sale both the fee simple title and the lease and option in question, could not claim that it had been divested of the title by the lease and option. Certainly Heyburn could not, by virtue of the lease and option, transfer title to the property. Fairly construed, the lease and option conferred no title but a mere option to buy. A mere right to purchase certain property cannot be regarded in law as sufficient to make the owner of the right, who may never exercise the option, a purchaser in fact. Until the option is exercised, the title to the property itself is in the Association. The only property with which Heyburn may be assessed is his lease and option. Luigart v. Lexington Turf Club, 130 Ky., 473; Wilgus v. Commonwealth, 9 Bush, 556. The ruling of the chancellor being in accord with the views herein expressed, it follows that the judgment below was proper.

Judgment affirmed.