State ex rel. Union Trust Co. v. Buder.

---

THE STATE ex rel. ISAAC H. ORR and ST. LOUIS UNION TRUST COMPANY v. WILLIAM BUDER, Assessor and President of Board of Equalization of City of St. Louis, et al.

In Banc, April 13, 1925.

1. **TAXATION: Shares of Stock in Business Corporation Held by Bank: Non-Taxable Securities.** The shares of stock in a business corporation, held by a bank, or an association doing a banking business, such as a trust company, are not taxable as "other values" or otherwise against the bank, where the property of such corporation consists of non-taxable securities, such as United States bonds.

2. ———: ———: ———: **Double Taxation: Other Values.** Where a real estate corporation, whose stock is owned by a bank, has paid taxes on its properties, it would be double taxation to require the bank to pay taxes on the value of the corporation's stock held by the bank; and likewise the bank cannot be required to pay taxes on the stock of a business corporation whose properties are non-taxable securities. Taxes against a business corporation must be assessed against it as a company, and paid by it, and having been already taxed the State has exhausted its power to further tax its properties; and if its shares of stock are held by a bank, and its properties are non-taxable securities, the power to tax its shares never existed, and the bank cannot be assessed with their value.

3. ———: ———: ———: **Indirectly Taxed.** Non-taxable property is non-taxable under all conditions. It cannot be taxed directly or indirectly. The value of the shares of stock of a business corporation whose property consists of non-taxable bonds cannot be assessed for purposes of taxation against a bank which owns such shares, either by increasing the value of the bank's stock, or by listing them as "other values," or otherwise.

# 238    SUPREME COURT OF MISSOURI,

State ex rel. Union Trust Co. v. Buder.

4. ———: ———: ———: **National Banks: Other Values.** It is the privilege of a national bank to issue bank notes up to ninety per cent of the non-taxable bonds held by it that is taxable, and not the mere value of the bonds; that privilege may be listed as "other values" under the statute (Sec. 12775, R. S. 1919), but a business corporation has no such privilege, and if its properties consist of non-taxable bonds; its shares of stock, if owned by a bank, cannot be listed against the bank as "other values." The privilege conferred by Congress on a national bank to use Government bonds as a basis for its notes has a distinct and separate value apart from the value of the bonds themselves, and the state statute directing that taxes be assessed against all banks by assessing their stock at par value less the value of their real estate and by adding "all other values," which would include the privilege of issuing bank notes, established a rule of uniformity for assessing the properties of all banks, and brought the statute into harmony with the act of Congress, but in no wise authorized the listing as "other values" against a state bank the shares of stock of a business corporation whose properties consist of such non-taxable bonds, and whose shares are held by such state bank, for such corporation has no such privilege.

5. ———: ———: ———: **All Other Values.** The expression "all other values" used in the statute (Sec. 12775, R. S. 1919) cannot be literally applied; they must yield to the purpose expressed in the first part of the section, namely, that the tax on the property of a business corporation must be paid by the corporation, and not by the stockholders; and when the taxes are assessed against the corporation, its shares of stock held by a bank are not subject to further taxes as "other values."

6. ———: ———: ———: **Fraud: To Escape Taxation.** It is not a fraud, actual or constructive, to hold non-taxable property in such a way as to avoid taxation. It is not a fraud to do what one has a legal right to do. It is not a fraud for a trust company, which is the principal stockholder in a business corporation, to contribute, through a series of years, its money to such corporation, for the purpose of providing a surplus for such corporation, which the trust company authorizes to hold non-taxable securities and so authorizes it in order that the trust company may avoid taxation on such non-taxable securities.

Citations to Headnotes: Headnote 1: Taxation, 37 Cyc. pp. 829, 881. Headnote 2: Taxation, 37 Cyc. pp. 758, 829, 881. Headnote 3: Taxation, 37 Cyc. pp. 829, 894. Headnote 4: Taxation, 37 Cyc. pp. 829, 830. Headnote 5: Taxation, 37 Cyc. p. 822. Headnote 6: Fraud, 26 C. J. sec. 1; Fraudulent Conveyances, 27 C. J. sec. 392.

## *Certiorari.*

RECORD OF BOARD OF EQUALIZATION QUASHED.

*Bryan, Williams & Cave* for relators.

(1) The Trust Company is authorized under the laws of Missouri to invest in and hold shares of stock in business and manufacturing companies and other corporations. R. S. 1919, sec. 11799. (2) The property of a manufacturing or business corporation is assessed and taxed against the corporation. R. S. 1919, sec. 12775. (3) But the shareholders of manufacturing or business corporations are not subject to taxation on account of their shares. State ex rel. Gardner v. Harris, 286 Mo. 262; State ex rel. Campbell v. Brinkop, 238 Mo. 298; State ex rel. Koeln v. Lesser, 237 Mo. 310; Valle v. Ziegler, 84 Mo. 214. (4) The Realty Company was a business corporation, and the shares of stock held by the Trust Company in the Realty Company were not subject to taxation. Authorities supra. (5) The Realty Company was an existing entity, different and distinct from the Trust Company, and the fact that the Trust Company owned the stock of the Realty Company did not subject the shareholders of the Trust Company to the payment of taxes on property owned by the Realty Company. Gramophone and Typewriter, Ltd., v. Stanley, 2 Kings Bench L. R. (1906) 856; Washburn Co. v. Bliss, 105 Atl. 179; State ex inf. v. Railroad, 237 Mo. 338; Cummings v. Parker, 250 Mo. 427.; Wann v. Scullin, 210 Mo. 429; Exchange Bank v. Macon Co., 97 Ga. 1.

*Oliver Senti* and *A. H. Bader* for respondents.

(1) Government bonds in which the capital, surplus, profits, premiums or earnings of a trust company are invested, are included in the amount which is taxable against the shareholders of such trust company. State ex rel. v. Brinkop, 238 Mo. 298. (2) The extent of the power of a corporation is measured by the terms of the state statutes creating it or relating to it, and it can right-

fully exercise only such powers as are expressly granted, or such incidental powers as are necessary to the carrying on of the business for which it is established. Trust companies are given no power or authority under the statutes to engage in the realty and securities business, either directly or indirectly.. They are limited to the powers granted under Sec. 11799, R. S. 1919, and the enumeration of such powers excludes all others. The purchase of all the shares of stock of the St. Louis Realty & Securities Company by the Trust Company is *ultra vires,* unlawful and void. R. S. 1919, sec. 11799; State ex inf. v. Lincoln Trust Co., 144 Mo. 562; State ex inf. Harvey v. Missouri Athletic Club, 261 Mo. 576; Hunting Club v. Kessler, 252 Mo. 424; Millinery Co. v. Trust Co., 251 Mo. 553. (3) The grant of authority to trust companies to buy, invest in and sell all kinds of Government, state, municipal and other bonds and all kinds of negotiable and non-negotiable paper, stocks, or other investment securities, carries with it neither the express nor the implied authority to purchase all the stock of other corporations for the purpose of directly or indirectly controlling their management, but confers only the power to deal in such paper in the course of the business for which the trust company is incorporated, and not otherwise. Luehrman v. Lincoln Trust Co., 192 S. W. 1033; State ex inf. v. Railroad, 237 Mo. 338; Millinery Co. v. Trust Co., 251 Mo. 553. (4) The Trust Company has violated the provisions of its charter, the Constitution and the laws and public policy of the State. It was not authorized to hold all the stock or to engage in the operation of the Realty & Securities Company, either directly or indirectly, nor to conduct and operate the business of said company which is not shown to be necessary or incident to the business of the Trust Company. A corporation, and particularly a trust company, has no right to own all or the majority of the stock of another corporation unless that right is especially conferred by statute. State ex inf. v. Trust Co., 144 Mo. 562; State ex rel. v. Bank, 157 Mo. App. 557. (5) The Trust Com-

pany has no power or authority under the laws to contribute its assets or property to a business or manufacturing corporation in order to create a surplus, or for any other purpose, whether it owns all the stock of such corporation or the majority of such stock or only one share. R. S. 1919, sec. 11799; Luehrman v. Lincoln Trust Co., 192 S. W. 1026; Millinery Co. v. Miss. Valley Tr. Co., 251 Mo. 553. (6) The Trust Company, by unlawfully diverting its funds for the purpose of defeating the imposition of taxes, has perpetrated a fraud in law and such funds remain taxable to the same extent and in the same manner as if such diversion had never taken place; and the fraud become more culpable when such funds are diverted to a corporation in which the trust company owns all the stock. Holly Springs Sav. & Ins. Co. v. Marshall Co., 52 Miss. 281; Mitchell v. Commissioners, 9 Kan. 344, 91 U. S. 206; Shotwell v. Moore, 129 U. S. 590; In re People's Bank, 203 Ill. 300. (7) Sec. 12775, R. S. 1919, authorizes the deduction from the total of the capital, reserved funds, profits, premiums or earnings, and all other values . . . the value of real estate, if any, represented by such shares of stock. This must be strictly construed, and those claiming exemptions thereunder must establish their right beyond a reasonable doubt, and in the construction thereof the intention of the Legislature must be ascertained to give such effect. State ex rel. v. Tax Commission, 282 Mo. 219; State ex rel. v. Board of Equalization, 256 Mo. 463.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondents.

Where a change or shift is made in the custody or character of property for the sole purpose of defrauding the Government of its just dues, and to enable a party to escape the payment of his just proportion of the taxes imposed by law, such party cannot shelter himself behind such change or shift so as to escape taxation. Crowder v. Riggs, 153 Ind. 158; Holly Springs S. & I. Co. v. Mar-

308 Mo. Sup.—16.

shall County, 52 Miss. 287; Jones v. Seward County, 10 Neb. 154; Sisler v. Foster, 72 Ohio St. 437; Mitchell v. Commrs., 9 Kan. 344; Ransom v. City of Burlington, 111 Iowa, 78; In re People's Bank of Vermont, 203 Ill. 303; Mitchell v. Commissioners, 91 U. S. 208; Shotwell v. Moore, 129 U. S. 590; Lumber Company v. Township of Elmer, 123 Mich. 61; Poppleton v. Yamhill County, 8 Ore. 337; Stifel v. Brown, 24 Mo. App. 102.

*Solon T. Gilmore* and *E. F. Halstead* for intervener.

Since the tax proceeding in question was a valuation of the shares of stock of the trust company, from which no deduction is permissible other than for real estate owned by the trust company and in those cases necessary to prevent double taxation, the assessment in question should be upheld. Sec. 12775, R. S. 1919; 6 Fed. Stat. Ann. (2 Ed.) 796; Van Allen v. Assessors, 3 Wall. 573; Bank Tax Case, 2 Wall. 200; Sections 6 and 7, Article X, Mo. Constitution; State ex rel. Miller v. Shryack, 179 Mo. 424; State ex rel. Campbell v. Brinkop, 238 Mo. 298; State ex rel. Gardner v. Harris, 286 Mo. 262; State ex rel. Koelen v. Lesser, 237 Mo. 310.

WHITE, J.—This is an original proceeding by *certiorari,* whereby the relators seek to quash the record and proceedings of the Board of Equalization of the City of St. Louis in assessing certain of their property for taxation.

The St. Louis Union Trust Company returned for taxation, as of June 1, 1923, its property listed as follows:

"Assessment Division.
"Department of Finance.
"William Buder, Assessor.
"St. Louis, Mo., June 1st, 1923.
"Statement of the St. Louis Union Trust Company.
"Amount of Capital .............................$ 5,000,000.00
"Amount of Surplus or Reserve ...............  5,000,000.00
"Amount of Undivided Profits, Premiums or
    Earnings ................................     932,015.26

"Total ...............................  $10,932,015.26

"Deduct:
    "Book Value Corporation
        Stock ..................... $ 9,912,658.92
    "Book Value Real Estate ......    124,288.15   $10,036,947.07

        "Total subject to tax .....................$   895,068.19"

The item in this list of "Book Value Corporation Stock $9,912,658.92", is explained in an exhibit attached listing about twenty corporations in which the Trust Company held stock aggregating in value the sum mentioned. On that list is the following item:

St. Louis Realty & Security Co., 250 shares
                Book Value ..................$2,371,215.69

Deduction of the book value of the corporation stock held by the Trust Company, amounting to nearly ten million dollars, was on the ground that the *corporations* in which that stock was held were taxed on the value of their taxable assets, and the *shareholders* in such corporation were not taxed as such.

The District Deputy Assessor, Mr. John H. Bole, who received the list, allowed all the deductions except the item of $2,371,215.69, representing the stock in the St. Louis Realty & Security Company. He added it to the $895,068.19, returned as subject to taxation. The Trust Company took the matter before the Board of Equalization of the City of St. Louis, and that Board likewise disallowed the deduction claimed by the Trust Company.

The book value of the stock in the Realty Company was made up in this way:

Non-taxable securities consisting of U. S. Bonds,
    Federal and Land Bank Bonds, Bonds of the
    Territory of Hawaii, Bonds of the City and County
    of Honolulu, Bonds issued by the Government of
    the Philippine Islands, aggregating ............$ 2,033,055.67
Railroad and Industrial Bonds Subject to
    taxation ....................................$   242,365.14
Real Estate returned by the Realty Company for
    taxation June 1, ...............................    95,794.88
Total Book Value .............................$ 2,371,215.69

The Board of Equalization allowed a deduction of the last two items, because the Realty Company as a corporation had paid taxes on them, and found that the item

of non-taxable securities should be included in the taxable valuation of the shares held by the Trust Company in the Realty Company, which increased the taxable property of the Trust Company from $895,068.19 to $2,928,123.86. The Board of Equalization in a record of its findings recited, among other things, a portion of the articles of association of the Realty Company, showing the purpose of its organization as a business corporation, incorporated under Article 7, Chapter 90, R. S. 1919. It found that the Realty Company was incorporated in 1910, with a capital of $25,000, all of which, with the exception of directors' qualifying shares, was held by the St. Louis Union Trust Company, and that the Trust Company, as stockholders of the Realty Company, had from time to time prior to January 1, 1923, contributed to the Realty Company for the purpose of providing a surplus for that company, sums of money aggregating $2,345,915.69, and in the year 1923, prior to June first, contributed for the same purpose the sum of $300. It was found then that the amount mentioned, representing the non-taxable securities held by the Realty Company was as stated.

It was stated in the petition for the writ that Isaac Orr was, at all times mentioned, a shareholder in the Union Trust Company, owning one hundred shares of the capital stock, and therefore interested as such shareholder on the assessment.

Thus the question for determination is whether the non-taxable securities held by the Realty Company, and not subject to tax in its hands, shall be listed as a part of the taxable valuation of the shares held in said company by the said Trust Company.

I.   Section 12775, Revised Statutes 1919, for the purpose of taxation, divides corporations into two classes; it provides that "the property of manufacturing companies and other corporations, named in Article VII, Chapter 90, . . . shall be assessed and taxed as such companies or corporations in their corporate names."

It then provides that banks and other institutions doing a banking business shall list to the assessor all shares held therein at their face value, and the value of the real estate represented by such shares of stock, and "all other values," belonging to such corporation. The real estate owned by such corporation is assessed to the corporation, and "all other values" so listed are valued at their "true money value," as the values represented by such shares of stock, for the purpose of taxing them. The tax on such shares is first paid by the corporation which is reimbursed by the shareholders.

Thus the shares in corporations first mentioned are not taxed, but the corporations pay the tax on all taxable property held by them. The tax on shares of stock in banks and in associations doing banking business, is paid by the shareholders. Under an Act of Congress, a state is authorized to tax the shares in national banks at their actual value. [Van Allen v. Assessors, 3 Wall. 573; State ex rel. v. Shryack, 179 Mo. 1. c. 439; State ex rel. v. Lesser, 237 Mo. 1. c. 326.] Under the authority of that Act of Congress, Section 12775, Revised Statutes 1919, provides for taxing shares of stock in a bank or an association doing banking business, in the manner mentioned. "All other values," owned by such corporation, considered in estimating the taxable value of the shares, would include government bonds and other non-taxable securities.

It is therefore claimed by respondent that the shares of stock in the Trust Company should be valued for taxation at their actual value, as shown by the property of the corporation, less real estate and such property as is otherwise taxed. Since the non-taxable securities held by the Realty Company are not otherwise taxed, their values should go into the list of values making up taxable assets of the Trust Company.

Contentions.

On the other hand the relators plant their case upon the proposition that shareholders in a business corporation, like the Realty Company, are not taxable on the value of their shares, but all the taxes assessable in

such cases are assessed againt the property of the corporation as such.

These two apparently incontrovertible and contradictory propositions it is our duty to reconcile.

II. As noted above, Section 12775, Revised Statutes 1919, provides that the property of corporations named in Article 7, Chapter 90, "shall be assessed and taxed as such companies or corporations."

Non-Taxable Securities: Indirect Taxation.

[State ex rel. Campbell v. Brinkop, 238 Mo. 298; Valle v. Ziegler, 84 Mo. 214.] This is because, as said by the court in the Brinkop case, the title to corporate property is in the corporation, although the beneficial interest is in those who own the stock. Such corporations pay the taxes upon *all the taxable property* owned by them, and the shares of stock held by the stockholders in such company are not taxed.

When a corporation pays a tax upon its property, then to tax the stockholders on the value of their shares in the corporation would be double taxation. This is true whether an individual or a corporation owns the stock. [State ex rel. Gardner v. Harris, 286 Mo. 278.] A corporation is put upon exactly the same footing in that respect as an individual. In the present case the Trust Company owned stock in about twenty corporations besides the Realty Company, in value about seven million dollars, and on those stocks it was not assessed. The various corporations had paid taxes on their property, the beneficial interest in which was represented by those shares. The assessor and the Board of Equalization did not assess those values to the Trust Company because it plainly would have been double taxation. It is argued by the respondent that the principle announced in the Brinkop case and like cases, applies only to a case of double taxation; it is a different principle where the property, which the shares represent, is non-taxable securities. It is true that in the Brinkop case the opinion intimates there should be some such distinction as to that.

The *individual owners* of stock in the Realty Company
pay no taxes or shares represented by such values. If
the shares held by the Trust Company in the Realty Com-
pany were held by a natural person, it is conceded they
would not be taxable; not because the Realty Company
had paid taxes on their value, but because they were non-
taxable. If the stockholders in the Trust Company in-
dividually held the shares of stock in the Realty Com-
pany, instead of holding their value through the medium
of stock in the Trust Company, those shares would not
be taxed. The stockholders of the Trust Company eas-
ily might have evaded the assessment in question, by
holding individually the stock of the Realty Company
in proportion to their holdings in the Trust Company,
or they might have appointed a personal trustee to hold
the stock in the Realty Company in proportion to their
holdings in the Trust Company. It merely happens, by
the accident of the shares being in the name of the Trust
Company instead of its shareholders, that the respond-
ents make a technical claim that the *values* are taxable
though the property itself is non-taxable.

Shares of stock in a corporation, like the Realty
Company, are not taxable because all the taxable prop-
erty of the corporation is assessed to the corporation and
paid by it. Nontaxable property held by the corporation
should no more be assessed against its shareholders than
against the corporation. To hold otherwise would pre-
sent this anomaly: Here are shares which are not tax-
able, and the corporation pays no tax on the property
they represent, but the shares become taxable when held
by another corporation, *because* the property which gives
them value is non-taxable.

The reason why shares in a business corporation are
not taxed is because the State already has exhausted its
power in that respect. The non-taxable property owned
by such corporation is in the same condition as the tax-
able property *after* the latter is taxed. In the one case,
the State has exhausted its power to tax; in the other
case it never had the power to tax. Non-taxable prop-

erty is non-taxable under all conditions.   When it cannot be taxed directly it should not be taxed indirectly.

This conclusion must be sound unless the all-inclusive provision of Section 12775, relating to "all other values" in banking corporations, incidentally is sufficient to overcome the reason of the rule as well as the letter of the same section relating to the taxing of corporate property other than that of banks.

III.   It is stated in some of the cases, that the provision in Section 12775, Revised Statutes 1919, assessing all values, except real estate belonging to banks, against

National Banks: Other Values.

their shareholders, thus including non-taxable securities in such values, was made in order to put state institutions of that kind on a par with national banks.   The State took advantage of the permission granted by Congress, and in that statute placed all such institutions, state and national, upon the same footing.   Then it becomes important to inquire why Congress saw fit to permit the taxation of stock in national banks whose property consisted of Government bonds?   The reason is very well expressed in Van Allen v. Assessors, 3 Wall. 582:

"It will be readily perceived, on adverting to the act, that the powers and privileges conferred by it upon these associations (meaning the national banks) are very great powers and privileges;—founded upon a new use and application of these Government bonds, especially the privilege of issuing notes to circulate in the community as money, to the amount of ninety per centum of the bonds deposited with the Treasurer; thereby nearly doubling their amount for all the operations and business purposes of the bank.   This currency furnishes means and facilities for conducting the operations of the associations, which, if used wisely and skillfully, cannot but result in great advantages and profits to all the members of the association—the shareholders of the bank."

Since a national bank has the privilege of issuing bank notes up to ninety per cent of the non-taxable bonds

which it holds, the value of the shares in that corporation is determined, not by the mere income value of the bonds, but by the property put at the disposal of the bank. Non-taxable securities are taxable as the property of a bank, not as such, but as associated with the privilege. In fact, such tax can hardly be said to be a tax of the non-taxable securities at all, for the Van Allen case goes further and says (l. c. 583), in replying to the argument that the act was unconstitutional:

"But this suggestion is scarcely well founded; for *were we to admit, for the sake, of the argument, this to be a tax of the bonds of capital stock of the bank, it is but a condition annexed to the enjoyment of this new use and new application of the bonds;* and if Congress possessed the power to grant these new rights and new privileges, which none of the learned counsel has denied, and which the whole argument assumes, then we do not see but the power to annex the conditions is equally clear and indisputable." (Italics ours).

So here is an indication that the tax on the shares of a national bank, whose values are represented by non taxable securities, is not a tax upon those securities at all, but a tax upon the privileges which Congress has conferred upon those institutions in the use of such bonds. We will not assume that the Legislature of the State intended to put the state banks upon a different basis in the matter of taxation, or to subject their shares to a taxation for any reason other than that which Congress entertained in permitting the taxation of the property of national banks.

Now the non-taxable securities held by the Realty Company gave the Trust Company and its stockholders no such privileges as are enjoyed by a stockholder in a national bank. The Trust Company has no advantage over any other holder of stock in the Realty Company.

Government bonds in the hands of a natural person, bearing a low rate of interest, would be practically worthless if taxed at their actual value, because the tax in many instances would almost equal the interest. But in

the hands of a national bank they create an available income, much greater than the interest they bear. These non-taxable securities, held by the Realty Company, would probably be unprofitable in the hands of a natural person who might own them, if they were taxed. They would be equally unprofitable in the hands of the Realty Company if they were taxed. And the shares of stock held in the Realty Company by the Trust Company would be worth little if the value represented by them in non-taxable securities were subject to tax. The State would gain nothing beyond the immediate tax, by imposing a tax on these shares. The record does not show the rate of interest borne by the non-taxable securities held by the Realty Company, but it is safe to presume, as a matter of common knowledge, that, if they were taxed, the Realty Company could not afford to hold them and the Trust Company could not afford to have the Realty Company hold them. They would speedily be disposed of to persons who would hold them as non-taxable.

If the expression "all other values," used in Section 12775 relating to banking corporations, should be construed literally to mean what it says, it would include *all* stock in corporations which pay taxes on their property. In this case some seven million dollars worth of such stock is not, and could not be, included by the assessor under the interpretation of the section in the authorities cited. Thus the literal meaning of those words gives way to the purpose expressed in the first part of the section: the tax on the property of business corporations shall be paid by the corporations and not by the shareholders.

While we must construe a statute to mean what it says, we cannot conclude that the Legislature, by the comprehensive terms of Section 12775, intended to tax any property out of existence.

Therefore, we are justified in refusing to extend the meaning of the words, "all other values," beyond their literal import in connection with their context. The "values," taken into consideration in determining the

taxes to be levied upon the shares in the Trust Company, must be values of property held by it, not values of property held by another corporation in which the Trust Company is a stockholder. *Property,* held by a business corporation in which the Trust Company holds stock, must be valued for taxation according to the law relating to such corporation.

IV.  It is argued with considerable persistence that the purpose of the Trust Company, in allowing the Realty Company to own the non-taxable securities instead of itself owning them, is to escape taxation and is an actual and constructive fraud upon the State.

Fraud.

Since the Trust Company owns practically all the stock in the Realty Company, and in effect owns the securities, the property is held in the name of the Realty Company for the purpose of avoiding taxation.  Cases are cited where a taxpayer has changed the form of his property for a few days to cover the date on which it is assessed, or puts it out of his hands during that time and retains control of it.  In all such cases evidence of actual fraud in order to escape taxation is apparent on the face of the transaction.

One case is cited, Holly Springs v. Marshall County, 52 Miss. 281, which involved non-taxable securities.  The day on which the property was assessable was the first day of January.  A few days before that the taxpayer, for the express purpose of avoiding taxation, invested his money in Government securities, and, a few days after the first day of January, he reconverted the property into current funds.  There the purpose was apparent on the face of the transaction.  There was no intention to *invest* in the non-taxable securities.

In the present case there was no finding by the Board of Equalization that there was any such purpose in having the Realty Company hold the non-taxable securities. In fact the investments in those securities had been made over a series of years.  The finding of the board was:

"That the St. Louis Union Trust Company, as a stockholder in the St. Louis Realty & Securities Company, from time to time, contributed to the St. Louis Realty and Securities Company, for the purpose of providing a surplus for that company, sums of money which, prior to January 1, 1923, aggregated $2,345,915.69."

Nothing is said about a purpose to avoid taxation. Of course we may infer that the Trust Company authorized the Realty Company to hold the non-taxable securities in order to avoid taxation of such securities if held by the Trust Company. But is that a fraud? Is there any fraud, actual or constructive, in holding property which is *non-taxable* in a way to avoid taxation?

In every case cited by respondent and the *amici curiae*, *taxable* property was manipulated in a way to avoid taxation. Here, there was no concealment. There is no fraud in doing a lawful act. A man may change his residence to avoid taxation; he may change the form of his property by putting his money in non-taxable securities, or in the form of property which would be taxed less, and is not guilty of fraud. [Draper v. Hatfield, 124 Mass. 53; Stilwell v. Corwin, 55 Ind. 433; Griffin v. Heard, 78 Texas, 607; City of Louisville v. Y. M. C. A., 166 Ky. 104.] One cannot be guilty of fraud by doing what he has a legal right to do. A court does not inquire into one's motives for doing a lawful act. [27 C. J. 1. c. 632-633; Bank v. Fry, 216 Mo. 34.]

Government, state and municipal bonds, and the like, are made non-taxable in order to save to people who must pay them the payment of more taxes. If they were taxed the increased interest which they would bear would have to be paid by higher taxes. This, without any corresponding revenue from the taxation of such securities. It is a matter of common knowledge that taxable securities, although bearing a higher rate of interest, are the most artful tax-dodgers known to the collector.

We conclude that the Board of Equalization of the City of St. Louis was without authority to add to the taxable list returned by the Trust Company as was done;

therefore, the record and proceedings of the said Board of Equalization should be quashed.

It is so ordered. All concur, except *Atwood, J.*, not sitting.