[No. 21921. *En Banc.* August 9, 1929.]

SPOKANE AND EASTERN TRUST COMPANY, *Respondent*, v. SPOKANE COUNTY, *Appellant.*[1]

[1]Reported in 280 Pac. 3.

*Chas. W. Greenough,* and *A. O. Colburn,* for appellant.

*Graves, Kizer & Graves,* for respondent.

MAIN, J.—This action was brought to recover a tax paid on bank stock under protest. The cause was tried to the court without a jury, and resulted in findings of fact and conclusions of law sustaining a recovery. From the judgment entered in favor of the plaintiff in the sum of $27,658.48, the defendant appeals.

The controlling facts may be summarized as follows: The respondent, the Spokane and Eastern Trust Company, is a corporation organized under the laws of this state, and is engaged in the banking and trust business in the city of Spokane. The respondent has a capital stock of one million dollars, divided into ten thousand shares of the par value of one hundred dollars per share. For the year 1926, its shares of stock were assessed at their book value, from which was deducted the indebtedness and the assessed value of the real property owned by the bank. Substantially the entire book value of the respondent's assets was made up of the value of its mortgages, notes, accounts, tax certificates, judgments, state, county, municipal and tax district bonds and warrants, United States bonds, stock in Federal Reserve bank and stock in domestic corporations.

The real property of the bank, which was deducted, was of comparatively small value, as was its banking house furniture. The money on hand March 1, 1926, was no considerable amount. The assessed value of the stock for the year 1926 consisted almost wholly of the securities mentioned. As stated, the bank paid the

tax and then brought this action to recover on the theory that including the securities in the value of the stock as assessed was in effect taxing nontaxable property.

The question is whether the value of nontaxable securities shall be deducted in determining the value of bank stock for taxation purposes.

Section 1 of art. 7 of the constitution of this state provides, in part, that all property in the state, not exempt, shall be taxed in proportion to its value. Section 2 of the same article provides that the legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money, except such as may be exempt from taxation.

Section 11097-28, Rem. 1927 Sup., provides that all shares of stock in a bank shall be assessed to the respective owners thereof and

". . . such shares shall be assessed at fifty per cent of their full and fair value in money on the first day of March in each year, first deducting therefrom the proportionate part of the assessed value of the real property belonging to the bank less any incumbrance thereon, . . ."

Section 11097-5, Rem. 1927 Sup., expressly provides "that mortgages, notes, accounts, certificates of deposit, tax certificates, judgments, state, county, municipal and taxing district bonds and warrants . . ." shall not be taxable.

The shares of stock in a corporation represent an interest in all the property owned by the corporation, and aside from the corporate assets, the corporate stock has, and can have, no value. When, therefore, all the property of the corporation is assessed, the stock thereof is also assessed. In *Burke v. Badlam,* 57 Cal. 594, it is said:

"Now, what is the stock of a corporation but its property—consisting of its franchise and such other property as the corporation may own? Of what else does its stock consist? If all this is taken away, what remains? Obviously nothing. When, therefore, all of the property of the corporation is assessed—its franchise and all of its other property of every character—then all of the stock of the corporation is assessed, and the mandate of the constitution is complied with. This property is held by the corporation in trust for the stockholders, who are the beneficial owners of it in certain proportions called shares, and which are usually evidenced by certificates of stock. The share of each stockholder is undoubtedly property, but it is an interest in the very property held by the corporation. It is his right to a proportionate share of the dividends and other property of the corporation—nothing more. When the property of the corporation is assessed to it, and the tax thereon paid, who but the stockholders pay it? It is true that it is paid from the treasury of the corporation before the money therein is divided, but it is substantially the same thing as if paid from the pockets of the individual stockholders. To assess all of the corporate property of the corporation, and also to assess to each of the stockholders the number of shares held by him, would, it is manifest, be assessing the same property twice, once in the aggregate to the corporation, the trustee of all the stockholders, and again separately to the individual stockholders, in proportion to the number of shares held by each."

The cases of *Cheeseborough v. City and County of San Francisco,* 153 Cal. 559, 96 Pac. 288, and the *Consolidated Coal Co. of St. Louis v. Miller,* 236 Ill. 149, 86 N. E. 205, are to the same effect. This court in *Gamble v. Dawson,* 67 Wash. 72, 120 Pac. 1060, Ann. Cas. 1913D 501, after reviewing the authorities, said that,

". . . the substance of all the judicial announcements is that the shares represent an undivided in-

terest in all of the property of the corporation, and that the same right exists whether any certificate to the share has been issued or not; that the issuance of the certificate in nowise affects the right of the shareholders.''

In *Spokane & Eastern Trust Co. v. Spokane County*, 70 Wash. 48, 126 Pac. 54, Ann. Cas. 1914B 641, it was held that the assessment of bank stock for the purposes of general taxation, under the statute requiring it to be assessed to the owners thereof at its full and fair value in money, was a property, and not an excise, tax. It was there said:

"This statute [Rem. & Bal. Code, § 9134] enacts that all the shares of stock in banks located within the state shall be assessed to the owners thereof 'at their full and fair value in money,' after deducting the proportionate part of the assessed value of the real estate belonging to the bank. The intention to make the assessment a property tax could not be more clearly expressed.''

This court has held that a statute requiring the property of corporations, other than banks, to be assessed to the corporation, precludes the right to assess the stock to the owners thereof, for the reason that, if the property be assessed to the corporation and the stock to the stockholders, it results in double taxation, and it will not be presumed that the legislature contemplated double taxation in the absence of specific legislation or a clear legislative intent to authorize it. In *Ridpath v. Spokane County*, 23 Wash. 436, 63 Pac. 261, it was held that all the property of domestic corporations in this state other than banking being assessable as the property of the corporation itself, the shares of stock therein held by individual shareholders cannot be assessed against them personally. It was there said:

"The statute seems to imply that, when corporate property is assessed in this state, the shareholders are not required to list the shares owned by them."

. That case, it is true, to the extent that it held that a tax on stock was an excise tax and not a property tax, was overruled in *Spokane & Eastern Trust Co. v. Spokane County, supra,* but the decision was in no other respect modified.

In *Lewiston Water & Power Co. v. Asotin County,* 24 Wash. 371, 64 Pac. 544, it was held that the separate listing and taxation of the capital stock of a corporation and its real and personal property, where the capital stock is all invested in real and personal property, is double taxation and therefore illegal unless authorized by the legislature. It was there said:

"It is maintained by counsel for appellant that in the assessment of shares of capital stock of a domestic corporation, where the property is all assessed to the corporation in which such capital stock is invested, a duplicate assessment and double tax is levied. We think this is correct. Judge Cooley on Taxation (2d ed.), p. 225, observes of double taxation:

" 'The same may be said of a tax on the property of a corporation and also on the capital which is invested in the property; if the latter is taxed as property, this also is duplicate taxation, and as much unequal as would be the taxation of a farmer's stock by value when on the same basis it is taxed as a part of his general property. When, for instance, the money paid in as capital of a manufacturing corporation has been invested in buildings and machinery, these are what then represent the capital, and to tax the capital as valuable property distinct from that which then represents it would be to tax a mere shadow; it would be to make the shadow stand for the substance in order that it might be taxed, when the substance itself is taxed directly under its own proper designation. We do not speak here of a taxation of the property and also of the franchise, those being two things, . . .' "

In that case, the court quoted with approval the excerpt above quoted from *Burke v. Badlam*, 57 Cal. 594.

With reference to bank stock, in *Dexter Horton Nat. Bank v. McKenzie*, 69 Wash. 314, 124 Pac. 915, it was held that, if the value of real property owned by the bank was not deducted from the value of its shares, the result would be double taxation. It was there said:

"We have already noticed that the assessment and taxation of this trust real property and the taxing of the units as personal property in the hands of their owners would be, in effect, double taxation. It is of course manifest that, if appellant cannot secure the reduction of the assessed value of its capital stock by having deducted therefrom the assessed value of the units it owns in this trust property, the effect will be the same as a taxing of both the real property and those units separately, and result in double taxation. While this court has held that duplicate or double taxation will not of itself render such taxation void as being in conflict with our constitution (*Pacific Nat. Bank v. Pierce County*, 20 Wash. 675, 56 Pac. 936), yet the rule has been recognized and followed by this court, which seems to be universal, that the legislative intent to authorize double taxation must plainly appear before it will be permitted by the courts. The manifest injustice of such taxation, in view of the fact that our system is based upon taxation of property in proportion to value, and in view of our constitutional requirement of uniform taxation, furnishes unusually strong reasons in this state for our holding to this rule of presumption against legislative intent to authorize double taxation." (Citing authorities.)

If the assessing of property to the corporation and also the assessing of stock to the stockholders is double taxation, as clearly appears from the decisions of this court just referred to, then it must necessarily follow that, if there is included in the taxable value of the stock of a banking corporation the value of

nontaxable securities, such securities are in effect taxed contrary to the mandate of the legislature. The nontaxable property owned by the corporation is in the same condition as the taxable property after it has been taxed. It would not be claimed that, in determining the value of the stock in a bank for taxation purposes, the value of the real estate owned by the corporation should not be deducted. The securities owned by the respondent which could not be directly taxed, cannot be taxed indirectly by including their value in that of the assessed value of the stock of the stockholders.

The case of *State ex rel. Orr v. Buder,* 308 Mo. 237, 271 S. W. 508, is directly in point. In that case, the St. Louis Union Trust Company was a banking corporation. It owned, with the exception of a few shares, all the stock in the St. Louis Realty & Security Company. The realty company owned a considerable amount of nontaxable securities. In the state of Missouri, as here, the property of corporations, other than those organized for banking purposes, was assessed to the corporation, and the stock of a banking corporation was assessed to the stockholders. In determining the value of the stock of the bank for taxation purposes, the assessing officer included the stock in the realty company, into the value of which went the nontaxable securities owned by that corporation. A stockholder in the bank brought an action to prevent the value of the nontaxable securities of the realty company being taken into consideration in assessing the value of the bank stock. The question presented in that case, as stated by the court, was this:

"Thus the question for determination is whether the nontaxable securities held by the realty company, and not subject to tax in its hands, shall be listed as a part of the taxable valuation of the shares held in said company by the said trust company."

It was there held that the value of the nontaxable securities could not be taken into consideration in determining the taxable value of the bank stock. It was there said:

"When a corporation pays a tax upon its property, then to tax the stockholders on the value of their shares in the corporation would be double taxation. This is true whether an individual or a corporation owns the stock. *State ex rel. Gardner v. Harris*, 286 Mo. 278, 227 S. W. 818. A corporation is put upon exactly the same footing in that respect as an individual. In the present case, the trust company owned stock in about 20 corporations besides the realty company, in value about $7,000,000, and on those stocks it was not assessed. The various corporations had paid taxes on their property, the beneficial interest in which was represented by those shares. The assessor and the board of equalization did not assess those values to the trust company because it plainly would have been double taxation. It is argued by the respondent that the principle announced in the Brinkop Case, and like cases, applies only to a case of double taxation. It is a different principle where the property, which the shares represent, is nontaxable securities. It is true that in the Brinkop Case the opinion intimates there should be some such distinction as to that.

"The individual owners of stock in the realty company pay no taxes or shares represented by such values. If the shares held by the trust company in the realty company were held by a natural person, it is conceded they would not be taxable, not because the realty company had paid taxes on their value, but because they were nontaxable. If the stockholders in the trust company individually held the shares of stock in the realty company, instead of holding their value through the medium of stock in the trust company, those shares would not be taxed. The stockholders of the trust company easily might have evaded the assessment in question, by holding individually the stock of the realty company in proportion to their holdings in the trust company, or they might have appointed a

personal trustee to hold the stock in the realty company in proportion to their holdings in the trust company. It merely happens, by the accident of the shares being in the name of the trust company instead of its shareholders, that the respondents make a technical claim that the values are taxable, though the property itself is nontaxable.

"Shares of stock in a corporation, like the realty company, are not taxable because all the taxable property of the corporation is assessed to the corporation and paid by it. Nontaxable property held by the corporation should no more be assessed against its shareholders than against the corporation. To hold otherwise would present this anomaly: Here are shares which are not taxable, and the corporation pays no tax on the property they represent, but the shares become taxable when held by another corporation, because the property which gives them value is nontaxable.

"The reason why shares in a business corporation are not taxed is because the state already has exhausted its power in that respect. The nontaxable property owned by such corporation is in the same condition as the taxable property after the latter is taxed; in the one case, the state has exhausted its power to tax, in the other case, it never had the power to tax. Nontaxable property is nontaxable under all conditions. When it cannot be taxed directly, it should not be taxed indirectly."

That case was heard *En Banc* by the supreme court of the state of Missouri and was concurred in by all members of that court with the exception of one who did not participate in the decision.

Our attention has been called to the cases of *Van Allen v. The Assessors*, 3 Wall. 573, and *Des Moines Bank v. Fairweather*, 263 U. S. 103, and other cases from the Federal supreme court. It is true that that court, in the cases cited, and probably in others, when considering the right to include nontaxable securities in the taxable value of the stock in national banks, has

made observations which indicated that, even though the securities were not taxable, they might enter into the value of the stock which was assessed to the holder thereof. In those cases, it is said that this may be done because there is a distinction between the corporation assets and shares, the one belonging to the corporation as an artificial entity and the other to the stockholders. In the *Des Moines Bank* case, it is said:

"As respects national banks, the rule is the same as with corporations in general."

If the rule of those cases were applied in this state, it would mean that, in corporations other than banking, the stock could be assessed to the stockholders after the property of the corporation had been assessed to it. As already seen, this court has distinctly held that this cannot be done. It must be remembered that the Federal supreme court was dealing with the assessment of stock in national banks, and not in state banks, as is the case now before us, and, in this connection, certain observations made in *State ex rel. Orr v. Buder, supra,* with reference to the case of *Van Allen v. The Assessors, supra,* may appropriately be set out herein. It was there said:

"Since a national bank has the privilege of issuing bank notes up to 90 per cent of the nontaxable bonds which it holds, the value of the shares in that corporation is determined, not by the mere income value of the bonds, but by the property put at the disposal of the bank. Nontaxable securities are taxable as the property of a bank, not as such, but as associated with the privilege. In fact, such tax can hardly be said to be a tax of the nontaxable securities at all, for the Van Allen Case goes further and says (loc. cit. 583), in replying to the argument that the act was unconstitutional:

" 'But this suggestion is scarcely well founded, for *were we to admit, for the sake of the argument, this to be a tax of the bonds or capital stock of the bank,*

. . . *it is but a condition annexed to the enjoyment of this new use and new application of the bonds;* and if congress possessed the power to grant these new rights and new privileges, which none of the learned counsel has denied, and which the whole argument assumes, then we do not see but the power to annex the conditions is equally clear and indisputable.' (Italics ours.)

"So here is an indication that the tax on the shares of a national bank, whose values are represented by nontaxable securities, is not a tax upon those securities at all, but a tax upon the privileges which congress has conferred upon those institutions in the use of such bonds. We will not assume that the legislature of the state intended to put the state banks upon a different basis in the matter of taxation, or to subject their shares to a taxation for any reason other than that which congress entertained in permitting the taxation of the property of national banks.

"Now the nontaxable securities held by the realty company gave the trust company and its stockholders no such privileges as are enjoyed by a stockholder in a national bank. The trust company has no advantage over any other holder of stock in the realty company.

"Government bonds in the hands of a natural person bearing a low rate of interest, would be practically worthless if taxed at their actual value, because the tax in many instances would almost equal the interest; but in the hands of a national bank they create an available income much greater than the interest they bear. These nontaxable securities, held by the realty company, would probably be unprofitable in the hands of a natural person who might own them, if they were taxed. They would be equally unprofitable in the hands of the realty company, if they were taxed. And the shares of stock held in the realty company by the trust company would be worth little if the value represented by them in nontaxable securities were subject to tax. The state would gain nothing beyond the immediate tax, by imposing a tax on these shares. The record does not show the rate of interest borne by the nontaxable securities held by the realty company, but it is safe to

presume, as a matter of common knowledge, that, if they were taxed, the realty company could not afford to hold them and the trust company could not afford to have the realty company hold them. They would speedily be disposed of to persons who would hold them as nontaxable.''

We are of the opinion that the nontaxable securities held by the respondent should not be taken into consideration in determining the value to be placed upon its stock for taxation purposes, because the effect would be to impose a tax indirectly on property which the legislature specifically said should be exempt.

The appellant further contends that the respondent was estopped from questioning the validity of the tax. Upon this question, it is sufficient to say that no estoppel was pleaded, and the facts, even if estoppel had been pleaded, would not justify a holding that the bank could not litigate the validity of the tax in question.

It is also contended that the respondent, before going into court, should have questioned the validity of the tax before the county and state boards of equalization and if relief was there denied should then have gone into court. The answer to this contention is found in *Yakima Valley Bank & Trust Co. v. Yakima County*, 149 Wash. 552, 271 Pac. 820.

The judgment will be affirmed.

BEALS, PARKER, TOLMAN, HOLCOMB, MILLARD, FRENCH, and FULLERTON, JJ., concur.

MITCHELL, C. J., was unable to participate in this case.